IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: | : Chapter 11 |
| JOHN IRWIN, Debtor | : Bankruptcy No. 10-14407 (ELF) |
| | : Joint Administration Requested |
| In Re: | : Chapter 11 |
| JACKLIN ASSOCIATES, INC. Debtor | : Bankruptcy No. 10-14408 (ELF) |

CONSENT ORDER FOR USE OF CASH COLLATERAL

AND NOW, this 15th day of Sept, 2010, upon consideration of the Debtor's Motion to Use of Cash Collateral, ~~this Court~~ after notice ~~having conducted~~ and a hearing and the Court having reviewed this Order, the Bank having agreed to use of cash collateral solely upon the terms set forth in this Order, and upon consent of the Debtors and the Bank ~~as indicated below, the Court hereby FINDS,~~ ORDERS and DECREES as follow:

A. On May 27, 2010, (the "Filing Date"), Jacklin Associates, Inc. (the "Debtor") filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. On the same day, John N. Irwin (also a "Debtor" or the "Individual Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Each Debtor remains in possession of

1

328186

its assets and the Corporate Debtor is operating its business as a Debtor-in-Possession (collectively, the "Debtors").

B.    Prior to the Filing Date, National Penn Bank, (the "Bank") made a loan in the original principal amount of $750,000.00, with interest, costs and fees thereon, (the "Bank Debt") to or for the benefit of the Debtors pursuant to the terms and conditions of certain promissory notes, guaranty agreements and security agreements between the Debtors and the Bank (collectively, the "Loan Documents") which are secured by all pre-petition Accounts, General Intangibles, Inventory, Equipment and the cash and non-cash Proceeds thereof (the "Collateral") of Corporate Debtor as more fully set forth in the Security Agreement dated December 20, 2002.

C.    The unpaid aggregate principal liability of the Debtors to the Bank under the Bank Debt, excluding interest, costs and counsel fees and expenses of collection, as of the Filing Date is $750,000.00.    The Bank Debt is not subject to offset, recoupment or counterclaim.

D.    The liens and security interest of the Bank in the assets of the Debtor in existence as of the Filing Date, and the cash and non-cash proceeds thereof, granted pursuant to the Loan Documents are validly perfected first liens and security

328186

interests subject to no other or higher liens or security interests with the possible exception of certain tax liens.

E.  Pursuant to Section 363 of the Bankruptcy Code, the Bank will consent to limited use of Cash Collateral by the Corporate Debtor for a period beginning the date of this Order and ending on the date established herein, solely upon the terms and conditions of this Consent Order.

F.  The Debtors acknowledge and agree that Bank has a duly and validly perfected security interest in the Collateral and Cash Collateral.

THEREFORE, it is ORDERED as follows:

1. <u>Use of Cash Collateral</u>.  Absent a default hereunder, Debtor is authorized and empowered to use, Cash Collateral now securing the Bank Debt for Permitted Uses (as defined in the Debtor's budget which is incorporated herein by reference) until the earlier of occurrence of an event of default under this Order or 5:00 p.m. on December 31, 2010 (the time the entry of this order to 5:00 p.m. on December 31, 2010, shall be referred to as the "Temporary Use Period") at which time such availability and authority to use Cash Collateral will automatically terminate unless the Court has entered an order directing otherwise.  The Cash Collateral shall be used only for payment of expenses arising in the ordinary course of the

3

328186

Debtor's business and consented to by the Bank as more fully set forth in the budget submitted by Corporate Debtor. Under no circumstances shall the Debtor use Cash Collateral for expenses not arising in the ordinary course of business unless such expenditures are either consented to by the Bank or approved by this Court after notice to the Bank and an opportunity for hearing.

    2. <u>Continuing Lien on Post-Petition Collateral</u>. As partial adequate protection, the Bank is hereby granted a continuing lien on and security interest in all Post-Petition Collateral, including, but not limited to, a replacement lien on post-petition Accounts, General Intangibles, and Inventory and the cash and non-cash Proceeds thereof (collectively, the "Post-Petition Collateral"). To the extent of any diminution in value of the Collateral, the Bank is granted super-priority administrative status as provided under Section 507(b) of the Bankruptcy Code. 11 U.S.C. 507(b). All security interests in the Post-Petition Collateral granted hereby shall be deemed granted as of the Filing Date and perfected as of the Filing Date. The Bank is not required to file financing statements, other documents or take any other action in order to validate or perfect the security interest granted to it hereunder and such security interest shall constitute a valid, duly perfected first

priority lien security interest in the Post-Petition Collateral; provided, however, the Bank shall, in its sole discretion be permitted to file financing statements or other documents to confirm perfection of such security interests and liens, and all such financing statements or similar documents shall be deemed to have been filed and recorded as of the Filing Date. The Collateral and the Post-Petition Collateral secure and shall continue to secure, in all respects, the Bank Debt.

3. <u>Bank Accounts</u>. The Corporate Debtor shall maintain one set of operating accounts only, which accounts shall be with the Bank.

4. <u>Cash Collateral Account</u>. The Corporate Debtor shall promptly deposit all proceeds of sale of any property of its estate or proceeds of billing for services, all collections of Accounts, and all other Cash Collateral, in the Cash Collateral Account established at the Bank. Funds for Permitted Uses shall be transferred from the Cash Collateral Account to the operating accounts on an as-needed basis in accordance with the budget.

5. <u>Reports</u>. The Debtor shall provide the Bank with: (a) copies of all schedules and statements of affairs and other documents filed in the Chapter 11 case; (b) all operating reports as soon as reports are submitted to the U.S. Trustee;

and (c) such other and further financial and other information as may be reasonably requested by the Bank from time to time. All such reports must be certified as true and correct by a responsible officer of the Debtor. All monthly reports shall be received by the Bank within 15 days of the close of each month. All reports required under this paragraph shall be delivered to the Bank via telecopier or at the following address:

>  Andrew Fox, V.P., Special Assets
>  National Penn Bank
>  P.O. Box 547
>  Boyertown, PA  19512
>  FAX NO.  (610) 369-6479

6. <u>Relief from Stay - Lien Perfection</u>. The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby lifted and terminated as to the Bank to the extent necessary to implement the provisions of this Order and the Stipulation and the filing of the financing statements or other instruments or documents evidencing the Bank's security interest in the Collateral and Post-Petition Collateral.

7. <u>No Charge on Collateral</u>. The Bank's consent to the use of Cash Collateral under the Stipulation shall not be deemed to charge the Collateral or any Post-Petition Collateral under Section 506(c) the Bankruptcy Code. 11 U.S.C 506(c).

8. <u>Additional Payments to Bank</u>. The Debtors shall make payment to the Bank of $1,000.00 per month commencing June

328186

21, 2010 and on the same day of each month thereafter during the Temporary Use Period to be applied to the principal of the Obligations due the Bank.

9. <u>No Waiver by Bank</u>.  The Bank's consent to the use of Cash Collateral hereunder shall not be deemed to waive any and all other rights and remedies of the Bank under the Bankruptcy Code, including, but not limited to: (a) its right to request additional adequate protection; (b) to seek for relief from the automatic stay; (c) to move for dismissal or conversion of the case; or (d) to object to any disclosure statement or plan filed by the Debtors or either of them.  Except as provided in this Order, the Bank's rights under the Loan Documents are not impaired or modified hereby and the Bank shall be entitled to receive the benefits of all of its Collateral and the proceeds thereof.

10. <u>Binding Nature of Order</u>.  This Order shall be binding upon the Debtors and any Trustee appointed or elected in this case and shall be effective immediately.  In the event this Order is amended, modified, stayed or vacated, whether on appeal or otherwise (a "Change") such Change shall be prospective only and the post-petition security interest granted to the Bank shall remain valid, enforceable and in full force and effect.

328186

11. <u>Authorization to Debtor</u>.  The Debtor is authorized, directed and empowered to perform the obligations set forth herein and to take any and all action and execute any and all documents to implement and effectuate the terms of this Order.

12. <u>Notice of Default</u>.  Upon occurrence of any further event of default defined in the Loan Documents the Bank shall be entitled to provide three days written notice to Debtor of the default and Debtor shall have the opportunity to cure said default.  If Debtor fails to cure the default, the Bank shall file an Affidavit of Default with the Court and immediately upon such filing both (i) the Debtor's authority to use cash collateral shall automatically terminate without further notice, hearing or order of Court and (ii) the Bank shall be entitled to seek relief from the automatic stay imposed by section 362 of the Bankruptcy Code.

13. <u>No Waiver of Deficiency or Remedies with Respect to Collateral</u>.  The entry of this Order shall be without prejudice to the right of the Bank to file a claim for any deficiency remaining after any judicial or non-judicial sale of the Collateral and application of the proceeds thereof to the indebtedness of the Debtors to the Bank.  Entry of this Order shall not effect the State law rights and remedies of the Bank

with respect to the Collateral or any third party liable to the Bank.

BY THE COURT:

_____  9/15/10
Eric L. Frank,
United States Bankruptcy Judge

The terms and conditions of the foregoing Order are hereby acknowledged, accepted and agreed by the undersigned counsel who represent themselves to be duly authorized by their respective clients.

BINGAMAN, HESS, COBLENTZ & BELL, P.C.

By: _____
Kurt Althouse, Esquire
Attorneys for the Bank

By: _____
Maureen P. Steady, Esquire
Attorney for Debtors

328186

I JOHN N. IRWIN
EXHIBIT A
10-14407 BH 9/15/
63

In re Jacklin Associates, Inc.
Debtor

Case No. 10-14409-elf

# CASH FLOW PROJECTIONS FOR THE 12 MONTH PERIOD: June 2010 through May 2011

This schedule must be filed with the Court and a copy submitted to the United States Trustee within 15 days after the order for relief. Amended cash flow projections should be submitted as necessary.

| | Month June | Month July | Month August | Month Sept. | Month Oct. | Month Nov. | Month Dec. | Month Jan. | Month Feb. | Month March | Month April | Month May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Beginning of Month | 31,810 | 33,209 | 31,698 | 33,097 | 37,296 | 39,720 | 41,119 | 40,818 | 42,242 | 43,641 | 46,840 | 49,264 | 31,810 |
| **RECEIPTS** | | | | | | | | | | | | | |
| CASH SALES | 17,033 | 18,033 | 17,033 | 20,033 | 19,033 | 17,033 | 17,033 | 18,033 | 17,033 | 19,033 | 19,033 | 17,033 | 215,396 |
| ACCOUNTS RECEIVABLE | | | | | | | | | | | | | |
| LOANS AND ADVANCES | | | | | | | | | | | | | |
| SALE OF ASSETS | | | | | | | | | | | | | |
| OTHER (ATTACH LIST) | | | | | | | | | | | | | |
| RENT ACCOUNT | 26,777 | 26,777 | 26,777 | 26,777 | 26,777 | 26,777 | 26,777 | 26,777 | 26,777 | 26,777 | 26,777 | 17,775 | 312,322 |
| **TOTAL RECEIPTS** | 43,810 | 44,810 | 43,810 | 46,810 | 45,810 | 43,810 | 43,810 | 44,810 | 43,810 | 45,810 | 45,810 | 34,808 | 527,718 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| NET PAYROLL | 6,760 | 6,760 | 6,760 | 6,760 | 6,760 | 6,760 | 6,760 | 6,760 | 6,760 | 6,760 | 6,760 | 6,760 | 81,120 |
| PAYROLL TAXES | 3,144 | 3,144 | 3,144 | 3,144 | 3,144 | 3,144 | 3,144 | 3,144 | 3,144 | 3,144 | 3,144 | 3,144 | 37,728 |
| SALES USE AND OTHER TAXES | | | | | | | | | | | | | |
| INVENTORY PURCHASES | | | | | | | | | | | | | |
| SECURED/RENTAL/LEASES | | | | | | | | | | | | | |
| INSURANCE | | 1,560 | | | | | | | | | | | 1,560 |
| ADMINISTRATIVE & SELLING | | | | | | | | | | | | | |
| OTHER (ATTACH LIST) | 5,507 | 7,207 | 5,507 | 5,707 | 5,507 | 5,507 | 7,207 | 5,507 | 5,507 | 5,707 | 5,507 | 5,507 | 69,884 |
| RENT ACCOUNT | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 20,000 | 317,000 |
| PROFESSIONAL FEES | | | | | | | | | | | | | |
| U.S. TRUSTEE FEES | | 650 | | | | | | | | | | | 3,575 |
| COURT COSTS | | | | | 975 | | | 975 | | | 975 | | |
| **TOTAL DISBURSEMENTS** | 42,411 | 46,321 | 42,411 | 42,611 | 43,386 | 42,411 | 44,111 | 43,386 | 42,411 | 42,611 | 43,386 | 35,411 | 510,867 |
| | | | | | | | | | | | | | |
| **NET CASH FLOW** (RECEIPTS LESS DISBURSEMENTS) | 1,399 | -1,511 | 1,399 | 4,199 | 2,424 | 1,399 | -301 | 1,424 | 1,399 | 3,199 | 2,424 | -603 | 16,851 |
| | | | | | | | | | | | | | |
| **Cash End of Month** | 33,209 | 31,698 | 33,097 | 37,296 | 39,720 | 41,119 | 40,818 | 42,242 | 43,641 | 46,840 | 49,264 | 48,661 | 48,661 |

FORM 4 (R-1)

In re Jacklin Associates, Inc.
Debtor

Case No. 10-14408-elf

## CASH FLOW PROJECTIONS FOR THE 12 MONTH PERIOD: June 2010 through May 2011

This schedule must be filed with the Court and a copy submitted to the United States Trustee within 15 days after the order for relief. Amended cash flow projections should be submitted as necessary.

| DISBURSEMENTS - OTHER | Month June | Month July | Month August | Month Sept. | Month Oct. | Month Nov. | Month Dec. | Month Jan. | Month Feb. | Month March | Month April | Month May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RENT | 2,960 | 2,960 | 2,960 | 2,960 | 2,960 | 2,960 | 2,960 | 2,960 | 2,960 | 2,960 | 2,960 | 2,960 | 35,520 |
| BENEFITS | 1,877 | 1,877 | 1,877 | 1,877 | 1,877 | 1,877 | 1,877 | 1,877 | 1,877 | 1,877 | 1,877 | 1,877 | 22,524 |
| OFFICE SUPPLIES | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 1,440 |
| POSTAGE AND DELIVERY | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| REPAIRS | 0 | 0 | 0 | 200 | 0 | 0 | 200 | 0 | 0 | 200 | 0 | 0 | 700 |
| TELEPHONE | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 4,200 |
| SOFTWARE | 0 | 1,700 | 0 | 0 | 0 | 0 | 1,500 | 0 | 0 | 0 | 0 | 0 | 3,200 |
| COMPUTER SUPPLIES | 0 | 100 | 0 | 100 | 0 | 0 | 0 | 0 | 0 | 100 | 0 | 100 | 600 |
| MISCELLANEOUS | 100 | 0 | 100 | 0 | 100 | 100 | 100 | 100 | 100 | 0 | 100 | 0 | 500 |
| TOTAL OTHER | 5,507 | 7,207 | 5,507 | 5,707 | 5,507 | 5,507 | 7,207 | 5,507 | 5,507 | 5,707 | 5,507 | 5,507 | 69,884 |

(9/99)

FORM 1R-1