**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
|     JOHN IRWIN, | : | Chapter 11 |
| | : | |
|     Debtor. | : | |
| | : | Bky. No. 10-14407 ELF |
| | : | |
| | : | JOINTLY ADMINISTERED |
| IN RE: | : | |
|     JACKLIN ASSOCIATES, INC., | : | |
| | : | |
|     Debtor. | : | |
| | : | |

# M E M O R A N D U M

## I.

The debtors, John Irwin ("Irwin") and Jacklin Associates, Inc. ("Jacklin") (collectively, "the Debtors") filed the above chapter 11 bankruptcy cases on May 27, 2010. The cases are now being jointly administered. Irwin is a 55% shareholder in Jacklin. Jacklin is in the business of providing business consulting services.

Prior to the commencement of the cases, the Debtors provided services to Joseph Forte and Joseph Forte, L.P. over a fifteen year period during which Forte and his company were engaged in a Ponzi scheme. Forte's activities resulted in the appointment of Marion S. Hecht, as a court-appointed Receiver ("the Receiver") for both Forte individually and his L.P. After her appointment, the Receiver filed a lawsuit against both Debtors in which she asserts claims against them arising from their alleged participation in Forte's Ponzi scheme activities. See Hecht v. Irwin, No. 10-cv-1371 (E.D. Pa.). That lawsuit was stayed by the Debtors' bankruptcy filing. See 11 U.S.C. §362(a). The Receiver claims that she is the largest creditor of each

Debtor. In Irwin's individual chapter 11 bankruptcy case, the Receiver has filed an adversary proceeding seeking a determination that Debtor Irwin's debt is nondischargeable under 11 U.S.C. §523(a)(2), (4), (6) and (19). (See Adv. No. 10-0348, Doc. # 1).

Presently before the court is the Receiver's Motion for Order Authorizing Discovery Pursuant to Rule 2004 ("the Motion"), filed in the main bankruptcy case. (See Bky. No. 10-14407, Doc. # 96).

The Receiver invokes Fed. R. Bankr. P. 2004 as an investigative tool and seeks authority to examine eleven individuals or entities: Irwin, Jacklin, Lucy Irwin, Karen I. McAteer, Carol Sander, Nancy Phillips, Fred D. Hesse, Richard Graves, Anthony Jannetta, Gotham Capital, LLC, and Skee Ball, Inc.

The discovery the Receiver seeks falls into two basic categories:

(1) information relating to asset transfers that may be avoidable as fraudulent transfers under 11 U.S.C. §544, 547, 548; and

(2) information relating to the existence and collectibility of debts owed by third parties to the bankruptcy estates.[1]

The first discovery category is directed primarily to Lucy Irwin, Karen McAteer, Carol

---

[1] At least initially, the Receiver would not have the legal authority to commence a transfer avoidance action under 11 U.S.C. §544, 547, 548 or to take other action to collect property of the bankruptcy estate. Those powers reside exclusively with the bankruptcy trustee. See generally Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.. 530 U.S. 1, 8-9 (2000). In these cases the Debtors, in their capacities as debtors-in-possession, exercise the powers of the bankruptcy trustee. However, at this time, the Receiver does not seek to take any action that is within the exclusive province of the Debtors. The rule of court at issue, Rule 2004, does not limit discovery rights to the trustee. Rather, it is a discovery tool that may be invoked by "any party in interest." Furthermore, if the Receiver's discovery efforts were to uncover assets or viable claims beneficial to the bankruptcy estate that the Debtors then failed to pursue, the court may grant the Receiver or some other party derivative standing to take further action on behalf of the bankruptcy estate. See Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548, 566 (3d Cir. 2003); In re National Forge Co., 326 B.R. 532, 543 (W.D. Pa. 2005); In re Centaur, LLC, 2010 W L 4624910, *4 -5 (Bankr. D. Del. Nov. 5, 2010).

Sander and Nancy Phillips, all of whom are insiders of the Debtors.[2] The second discovery category is directed primarily to Fred D. Hesse, Richard Graves, Anthony Jannetta, Gotham Capital, LLC and Skee Ball, Inc., all of whom the Receiver believes may be liable on account of loans made to them by the Debtor or Debtors.[3]

The Debtors, Lucy Irwin, Carol Sander and Anthony Jannetta each have filed objections to the Motion. The court held a hearing on the Motion on November 24, 2010. At that time, the Receiver and the Debtors reported that they had reached a settlement of their dispute with respect to the requested Rule 2004 examination and stated their intention to file a consent order for entry by the court. The Objections of all of the non-Debtors remain unresolved.

For the reasons set forth below, I will grant the Receiver's Motion, but restrict the initial scope of the Rule 2004 examinations. The restrictions imposed will be without prejudice to the Receiver's right to request more expansive Rule 2004 discovery in the future.

## II.

The main issue that divides the parties is how far back in time the Receiver should be able to inquire in her discovery requests directed to the non-Debtors.[4] The issue centers on 12

---

[2] Lucy Irwin is John Irwin's spouse. Karen McAteer, Carol Sander and Nancy Phillips are John Irwin's daughters and are minority shareholders of Debtor Jacklin Associates, Inc. See 11 U.S.C. §101(31).

[3] As stated in Part II, C., infra, I do not mean to suggest that the two categories are entirely mutually exclusive.

[4] Lucy Irwin makes the threshold objection that the Rule 2004 examinations should not be
(continued...)

Pa. C.S. §5109(1), which provides that under Pennsylvania law, a present or future creditor of a transferor may avoid transfers effected with an "actual intent" to hinder, delay or defraud a creditor, if the transfer was made within four years of the filing of the claim or "within one year after the transfer . . . was or could reasonably have been discovered by the claimant."[5]  Read literally, §5109(1) appears to provide a statutory "discovery rule," that allows for an unlimited "look back" period for the avoidance of transfers effected with "actual intent" to hinder, delay or defraud creditors – provided the claimant files suit within one year after the claimant reasonably could have been aware of the transfer.

---

[4] (...continued)
permitted because the Receiver has already commenced an adversary proceeding and that, generally speaking, after a creditor commences an adversary proceeding, it must conduct discovery pursuant to Rules 7026-37, not Rule 2004.  See, e.g., In re 2435 Plainfield Ave., 223 B.R. 440, 456 (Bankr. D.N.J. 1998); In re Bennett Funding Group, Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996); In re Valley Forge Plaza Associates, 109 B.R. 669, 674 (Bankr. E.D. Pa.), appeal dismissed, 116 B.R. 420 (E.D. Pa. 1990).  The Receiver responds by pointing out that she seeks discovery relating to potential assets of the bankruptcy estates and the viability of potential transfer avoidance actions, not discovery relating to whether her claims against Irwin are nondischargeable under 11 U.S.C. §523(a).  I agree with the Receiver that the requested discovery should be permitted because its subject matter is sufficiently distinct from that in the pending nondischargeability adversary proceeding.  See In re Washington Mut., Inc., 408 B.R. 45, 49-51 (Bankr. D. Del. 2009).

[5] The full text of §5109 is as follows:

> A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
>
> > (1) under section 5104(a)(1) (relating to transfers fraudulent as to present and future creditors), within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant; or
> >
> > (2) under section 5104(a)(2) or 5105 (relating to transfers fraudulent as to present creditors), within four years after the transfer was made or the obligation was incurred.

The scope of the "look back" period under applicable state law, 12 Pa. C.S. §5109(1), is relevant in resolving the present dispute under Rule 2004 because it helps define the boundaries of "relevancy" in any examination designed to investigate a bankruptcy trustee's potential claims under 11 U.S.C. §544(b).[6]

### A. The Insiders

With respect to the first category of discovery (i.e., primarily, potential fraudulent transfers to insiders), the Receiver maintains that because the Debtors participated in and were enriched by the fraudulent activities of Joseph S. Forte and Joseph Forte, L.P., it follows that the Debtors had every incentive, from the beginning of the fraudulent activities in 1995, to protect the fruits of the scheme by transferring assets to third party insiders (who were close relatives or shareholders or both) and that any transfers during that time, more likely than not, would have been made with "actual intent to hinder, delay or defraud" creditors within the meaning of 12 Pa. C.S. §5104(a)(1). Therefore, the Receiver reasons that 12 Pa. C.S. §5109(1) applies and the bankruptcy estates' "look back" period includes any transfer made by either of the Debtors to these insiders going back to the commencement of the Forte fraudulent scheme in 1995.

---

[6] Section 544(b) provides that, subject to an exception not pertinent here,

> the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. §544(b).

The insiders counter that:

- any claims the bankruptcy estate may have had under Pennsylvania law and 11 U.S.C. §544 for alleged fraudulent transfers occurring prior to May 26, 2006 are barred by 12 Pa. C.S. §5109 (and therefore, the claims expired before the commencement of these bankruptcy cases and cannot be revived by §544(b)) because the Receiver was on notice for more than one year before the commencement of the bankruptcy cases and filed no action to set aside any potential fraudulent transfers that occurred prior to May 26, 2006; and,

- because it is neither intuitive nor obvious that every transfer made to family member-insiders years before the fraudulent scheme unraveled would have been made with the requisite "actual intent," even if the statute of limitations has not run, the burden of the discovery request (going back fifteen years) is unreasonable in the circumstances presented and should be circumscribed.

As demonstrated by the thoughtful arguments presented by counsel in their papers and at the hearing on the Motion, the issues raised by the parties with respect the scope of the Rule 2004 examinations in this case are somewhat complex. The issues include:

- the appropriate role of an individual creditor in investigating potential §544 claims of the bankruptcy estate in a chapter 11 case;

- the nature of the claims the Receiver asserts against the Debtors in these bankruptcy cases;

- the proper construction given to 12 Pa. C.S. §5109(1);

- the reasonableness of the conduct of the Receiver and her state of mind within the first year after her appointment and prior to the commencement of the bankruptcy cases;

- the degree to which the bankruptcy court should explore various collateral, factual issues in order to determine the appropriate scope of a Rule 2004 examination; and,

- how to strike an appropriate balance between the Receiver's right to discovery and the risk of placing on undue burden on the responding parties.

Resolution of certain of these issues in a precise and formal manner would likely require the expenditure of additional resources (perhaps substantial) by the parties and the court, in the form of additional briefing and an evidentiary hearing focusing on the legal and factual issues arising under 12 Pa. C.S. §5109(1).

Given the posture of this contested matter – essentially a discovery dispute arising prior to the initiation of a potential, unfiled adversary proceeding – I consider it appropriate to limit the parties' and the court's expenditure of resources at this time. In the exercise of my discretion,[7] I conclude that the best course is to permit Rule 2004 discovery to proceed in a sequential fashion, rather than resolve, at this time, the factual and legal issues the parties have raised. Specifically, I will limit, perhaps only temporarily, the Receiver's "look back" for discovery of potential fraudulent transfers to the four-year period generally applicable under 12 Pa. C.S. §5109 (without the benefit of the statutory "discovery rule" found in §5109(1)). However, this limitation is without prejudice and may be reexamined later in the case, based on further developments.

I reach this result for several related reasons.

First, as alluded to above, in order to ascertain the proper scope of a Rule 2004 examination, I find it inadvisable to conduct a collateral mini-trial to determine whether or not the one year "discovery rule" under 12 Pa. C.S. §5109(1) sustains the viability of otherwise stale transfer avoidance claims. This determination would require that the parties generate and the

---

[7] See, e.g., In re Board of Directors of Hopewell Intern. Ins. Ltd., 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) (court has "significant discretion" under Rule 2004); In re Jordano Elec. Co. of Ohio, Inc., 83 B.R. 1, (Bankr. S.D. Ohio 1987) (request for examination under the provisions of Bankruptcy Rule 2004 is subject to the discretion of the court); Matter of Wilcher, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (Rule 2004 requires the court to exercise its discretion and balance competing interests).

court digest a significant quantum of evidence relating to the state of mind and the reasonableness of the conduct of the Receiver and, potentially, numerous other creditors[8] in the period preceding one year before the commencement of the bankruptcy cases.[9]  I consider the alternative – allowing more limited discovery – a far better use of everyone's resources in the short run.

Second, the initial discovery being permitted may shed further light on the issues and permit the parties to resolve, or at least narrow, the issues relating to transfers that may have

---

[8]     Carol Sander, in particular, presses the argument that, in the time period between March 30, 2009 (the date of her appointment as Receiver) and May 27, 2009 (one year before the commencement of the bankruptcy cases),  the Receiver "could reasonably have . . .  discovered" the transfers she now wishes to investigate through Rule 2004.  She reasons that having failed to take any action to set aside the pre-2006 transfers in that time frame, with the subsequent passage of more than one year between her appointment and the commencement of the bankruptcy cases, all possible claims requiring a "look back" of more than four years are barred under 42 Pa.C.S. § 5109(1).

Regardless whether Sander is correct in her contention regarding the Receiver's, state of mind and conduct between  March 30, 2009 and May 27, 2009, she overlooks the legal principle that the bankruptcy trustee's ability to bring an avoidance actions under 11 U.S.C. §544(b) and 42 Pa.C.S. §5109(1) is not dependent solely on the knowledge and conduct of the Receiver in the relevant time frame.  Section 544(b) allows the bankruptcy trustee to stand in the shoes of <u>any actual creditor</u> and avoid any transfer that is voidable by such actual creditor under applicable nonbankruptcy law.  <u>See, e.g.</u>, <u>In re Greater Southeast Community Hosp. Corp. I</u>, 365 B.R. 293, 301-02 (Bankr. D.D.C. 2006); <u>In re Porras</u>, 312 B.R. 81, 97 (Bankr. W.D. Tex. 2004). Thus, even if Sander's contentions regarding the Receiver are correct, if any creditor other than the Receiver could <u>not</u> reasonably have discovered the transfers at issue more than one year before the commencement of the bankruptcy cases, the bankruptcy trustee still may have viable transfer avoidance claims.  Obviously, the need to consider the entire creditor body when evaluating the breadth of the bankruptcy trustee's potential claims under §544(b) further complicates the nature of the evidentiary hearing that would need to be held to determine the appropriate scope of Rule 2004 discovery.

In any event, my ruling today does not resolve how far the trustee' potential "look back" is in these bankruptcy cases, either for purposes of discovery or on the merits of any §544(b) claims.

[9]     Determining the appropriate scope of discovery under §5190(1) is so intertwined with the merits of a fraudulent transfer claim based on §5104(a)(1) that such a hearing would likely be akin to a preliminary injunction hearing.

-8-

occurred prior to the four year "look back."

Third, the discovery being permitted is not inconsiderable. It is likely to place a significant burden on the insider parties. It therefore, strikes me that sequential discovery would ease their burden and make the process more manageable for them in the long run (even if additional discovery is requested by the Receiver and permitted by the court in the future).[10]

Fourth, the Debtors are actively seeking a global resolution of their disputes with the Receiver. The parties' willingness to engage in mediation with a skilled mediator (U.S. Magistrate Judge Rice) suggests that there is a meaningful potential for settlement. Presumably, such a resolution would encompass the pending nondischargeability adversary proceeding (Adv. No. 10-0348) and consensual plans of reorganization in the two bankruptcy cases. A settlement also may significantly impact on the scope of the Receiver's Rule 2004 examination request. I believe it is beneficial to permit the mediation process to proceed further before expanding the scope of the active litigation among the parties.

### B. The Non-Insiders

While it may seem counterintuitive to permit discovery for a greater time period with respect to the non-insiders as compared to insiders, I will permit certain discovery requests to reach back to 1995. This decision follows from the contractual nature of certain potential claims that the Receiver wishes to investigate and the nature of the statute of limitations in

---

[10] I am aware that, at the hearing, Carol Sander's counsel expressed some concern about sequential discovery, in particular, the possibility that Ms. Sander may have to appear twice for a Rule 2004 examination. However, I perceive the prospects of a §5109(1) mini-trial or permitting the Receiver's requested fifteen year "look back" as worse alternatives.

Pennsylvania.

The statute of limitations for contract claims in Pennsylvania is four years. The limitations period for a contract that is "continuing" begins to run either when the breach occurs or when the contract is terminated. E.g., Crispo v. Crispo, 909 A.2d 308, 313 (Pa. Super. 2006). Thus, contracts that may have value to the bankruptcy estate could have been created well before the four year period immediately preceding the commencement of a bankruptcy case. With respect to an oral contract to repay a loan, in particular – the type of contract the Receiver appears most interested in investigating – the limitations period commences when the loan was made. In re Michael Angelo Corry Inn, Inc., 297 B.R. 435, 438 (Bankr. W.D. Pa. 2003). However, the statute is tolled by "acknowledgment." A borrower may acknowledge the debt through "clear, distinct and unequivocal" conduct. Id. (quoting other cases). Payment constitutes acknowledgment. E.g., Makozy v. Makozy, 874 A.2d 1160, 1171 (Pa. Super.), appeal denied, 891 A.2d 733 (Pa. 2005); accord U.S. v. Hemmons, 774 F. Supp. 346, 351 (E.D. Pa. 1991) aff'd 972 F.2d 1333 (3d Cir. 1992). The effect of the acknowledgment doctrine is that loan contracts that may have value to the bankruptcy estate could have been created far earlier than four years prior to the commencement of these bankruptcy cases, making the Receiver's request for an expanded time period in her discovery requests both relevant and reasonable.

The other consideration that leads me to permit more expansive discovery with respect to the inquiry into contractual claims is that, unlike the discovery directed at the transfers to insiders, there are likely to be far fewer transactions involved. Therefore, requiring the Rule 2004 examinees to respond to information requests covering the longer time period is not likely to be burdensome.

### C. Caveat

Finally, I point out that although I have structured this Memorandum by reference to the insiders and non-insiders, the Order I am entering is not organized in that fashion. The differing "look back" periods being permitted are categorical; they are based on the nature of the claims that the Receiver wishes to investigate. To the extent that requests in both categories are made to a party, different "look back" periods will apply.

### III.

For the reasons set forth above, the Receiver's Motion will be granted in part and denied in part. An Order consistent with this Memorandum will be entered.

Date:  **December 2, 2010**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**