UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| JOHN IRWIN, | : | Bankruptcy No. 10-14407 (ELF) |
| Debtor. | : | |
| In re: | : | Chapter 11 |
| JACKLIN ASSOCIATES, INC., | : | Bankruptcy No. 10-14408 (ELF) |
| Debtor. | : | (Jointly Administered) |

**SECOND JOINT MOTION OF THE DEBTORS AND DEBTORS-IN-POSSESSION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE EXTENDING DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE AND SOLICIT ACCEPTANCES OF A PLAN**

TO:   THE HONORABLE ERIC L. FRANK,
      UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), hereby submit this motion (the "**Motion**") seeking entry of an order, pursuant to section 1121(d) of Chapter 11 of Title 11 of the United States Bankruptcy Code, as amended (the "**Bankruptcy Code**") extending the Debtors' respective exclusive periods within which to file and solicit acceptances of a plan of reorganization. In support of the Motion, the Debtors respectfully represent as follows:

### JURISDICTION, VENUE AND STATUTORY PREDICATE

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

PHIL1 1324496-1

2. The statutory predicate for the relief requested herein is section 1121(d) of the Bankruptcy Code.

## BACKGROUND

3. On May 27, 2010 (the "**Petition Date**"), John Irwin ("**Irwin**") and an affiliated corporation, Jacklin Associates, Inc. ("**Jacklin**"), filed respective voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. To date, no creditors' committee has been appointed in either case by the Office of the United States Trustee. The Debtors are continuing in possession of their assets and are operating their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. Irwin is a 55% shareholder of Jacklin. Irwin's three daughters own the remaining shares of Jacklin, which is a company engaged in the business of providing business consulting services. Both Irwin and Jacklin are parties to several lawsuits arising out of a Ponzi scheme run by Joseph Forte ("**Forte**"). Irwin, his daughters and his wife had all, without any knowledge of the nature of Forte's activities, invested substantial sums with Forte. Additionally, Jacklin provided certain business services relating to Joseph Forte, L.P., a limited partnership owned by Forte (the "**Limited Partnership**").

### a) The Forte Ponzi Scheme Litigation

5. In January, 2009, the Securities and Exchange Commission ("**SEC**") and the Commodity Futures Trading Commission filed related actions against Forte and the Limited Partnership alleging that they had violated numerous securities laws through Forte's operation of a Ponzi scheme from 1995 until 2008. On March 17, 2009, Marion Hecht (the "**Receiver**") was appointed as receiver for the Limited Partnership. On November 24, 2009, Forte pleaded guilty to wire fraud, mail fraud, bank fraud, and money laundering charges, and was sentenced to a

Case 10-14407-elf    Doc 148    Filed 12/29/10    Entered 12/29/10 10:27:49    Desc Main
Document      Page 4 of 16

fifteen year prison term. Shortly thereafter, the Receiver commenced litigation in the United States District Court for the Eastern District of Pennsylvania ("**the Receivership Action**") against both Irwin and Jacklin, seeking damages in excess of $34 million.

### b) The Class Action

6. In addition to the Receivership Action, Irwin and Jacklin were named as defendants in a class action brought in the United States District Court for the Eastern District of Pennsylvania. The class in that case has yet to be certified, and the case has been stayed. Although no specific amount is demanded in the class action, the Debtors estimate that the class plaintiff is asserting substantial claims.

### c) The Filings

7. Irwin and Jacklin filed their respective Chapter 11 cases in order to stay the Receivership Action and to formulate Chapter 11 plans which will resolve all creditor claims by means of the disposition of Irwin's non-exempt assets for the benefit of his creditors and the liquidation or financial reorganization of Jacklin.

### d) The Prior Exclusivity Extensions

8. On August 24, 2010, the Debtors moved to extend the exclusivity deadlines, to permit the filing of a consensual plan. Additional time was needed to negotiate with the Receiver regarding the consensual resolution of her claim (the "**First Exclusivity Motion**").

9. On September 22, 2010, the Court granted the First Exclusivity Motion, extending the deadline by which the Debtors' have to file a plan to January 23, 2011, and the time to solicit acceptances of the plan to March 23, 2011 (the "**First Exclusivity Order**").

### RELIEF REQUESTED

10. Pursuant to section 1121(b) of the Bankruptcy Code, the Debtors have the exclusive right to file one or more plans of reorganization for an initial period of 120 days after

3

the Petition Date (the "**Plan Proposal Period**"). Pursuant to section 1121(c), the Debtors have an additional 60 days to solicit acceptances of such plan, during which time competing plans may not be filed (the "**Solicitation Period**," and, together with the Plan Proposal Period, the "**Exclusive Periods**").

11.     As set forth above, pursuant to the First Exclusivity Order, the Debtors' initial Plan Proposal Period and initial Solicitation Period will expire on January 23, 2010 and March 23, 2010, respectively.

12.     By this Motion, the Debtors seek the entry of an order extending (i) the Plan Proposal Period through and including April 30, 2011, and (ii) the Solicitation Period through and including June 30, 2011, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods.

## BASIS FOR RELIEF REQUESTED AND APPLICABLE AUTHORITY

13.     The Exclusive Periods are intended to afford chapter 11 debtors a full and fair opportunity to return the greatest value to the debtors' estates, their creditors and parties-in-interest without disrupting their reorganization efforts as a result of plans filed by non-debtor parties. The extension of the Exclusive Periods is justified by the significant progress the Debtors have made in these chapter 11 cases since the Petition Date, as discussed below.

14.     The objective of a chapter 11 case is the negotiation, formulation and consummation of a plan, and the Debtors intend to achieve that objective. In circumstances where, as here, the initial 120 and 180-day exclusive periods provided for in the Bankruptcy Code prove to be an unrealistic time frame to achieve confirmation of a plan, section 1121(d) of the Bankruptcy Code provides for an extension of the respective exclusive periods for "cause." Specifically, section 1121(d) of the Bankruptcy Code provides:

4

>   (1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
>
>   (2) (A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
>
>   > (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).

15. It is well established that the decision to extend a debtor's exclusivity periods is committed to the sound discretion of the Bankruptcy Court and should be based upon the facts and circumstances of a particular case. *See First American Bank of New York v. Southwest Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986). Although the Bankruptcy Code does not define "cause" for an extension, courts have looked to the legislative history of section 1121(d) for guidance. *See In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D. N.Y. 1989). Congress did not intend that the 120-and 180-day periods be hard and fast. Rather, Congress intended that the exclusive periods be of an adequate length, given the circumstances, for a debtor to formulate, negotiate and draft a viable plan without the disruption to the business that would occur with the filing of competing plans. In fact, Congress recognized that often a 120-day exclusivity period will not afford a debtor sufficient time to formulate and negotiate a plan:

>   [t]he court is given the power, though, to increase ... the 120-day period depending on the circumstances of the case. [T]he bill allows the flexibility for individual cases that is not available today.

H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (footnotes omitted); *see also In re Amko Plastics*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) (noting that Congress intended courts to have

5

flexibility in dealing with extensions of exclusivity); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of [section 1121(d)] is flexibility.").

16. When considering whether "cause" exists to extend exclusivity under section 1121(d) of the Bankruptcy Code, courts have looked at various factors, including, but not limited to, whether the debtor (1) has made good faith progress, (2) has demonstrated reasonable prospects for filing a viable plan, (3) is negotiating with creditors, (4) is seeking the extension for an improper purpose, and (5) is paying its debts as they become due. *See generally, In re Cent. Jersey Airport Servs.*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002).

17. As to the first and second factors, the Debtors have made good faith progress towards obtaining a confirmable plan and can demonstrate a reasonable prospect of reorganization. Because Jacklin is a substantial creditor of Irwin, Jacklin's ability to formulate a plan is dependent in part on distributions which will become available under Irwin's plan. Irwin has circulated a draft plan for review and comments by the Receiver and has met with counsel for the Receiver several times over the past few months for the purpose of further negotiations. Specifically, on December 13, 2010 Irwin and the Receiver participated in a mediation held before the Honorable Timothy Rice. Although the entirety of the dispute between the Receiver and Irwin has not been resolved, the parties have made significant progress in reaching a resolution. The Debtors have been diligently working to produce all of the documents requested by the Receiver. In fact, immediately after the mediation, Irwin made himself available to answer the Receiver's questions regarding some of his assets.

18. As to the third and fourth factors enumerated above, the existing plan proposal and the September meeting demonstrate that the Debtors are negotiating in good faith with their

6

Case 10-14407-elf    Doc 148    Filed 12/29/10    Entered 12/29/10 10:27:49    Desc Main
Document    Page 12 of 16

creditors and are not seeking this extension to obtain an unfair bargaining advantage or for any other improper purpose.

19.     The fifth factor similarly warrants the extension of the Exclusive Periods. Courts considering an extension of exclusivity may also assess a debtor's liquidity and solvency. *See In re Ravenna Indus., Inc.*, 20 B.R. 886, 890 (Bankr. N.D. Ohio 1982); *Continental Casualty Co. v. Burns & Roe Enters. (In re Burns & Roe Enters.)*, 2005 U.S. Dist. LEXIS 26247, *12 (D.N.J. Nov. 3, 2005). As reflected in the Debtors' monthly operating reports, both Debtors are paying their bills as they become due and have met all of the requirements under the United States Trustee's operating guidelines since the Petition Date.

20.     Consequently, cause exists to extend the Exclusive Periods under section 1121(d) of the Bankruptcy Code.

## NOTICE

21.     No trustee or examiner has been appointed in these cases. Notice of this Motion has been given to: (i) the Office of the United States Trustee for the Eastern District of Pennsylvania; (ii) all of the Debtors' creditors; and (iii) all parties who have filed a notice of appearance or otherwise requested notice in these Chapter 11 proceedings in accordance with local rules and procedures or orders of this Court. The Debtors submit that no other notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein, together with such other and further relief as the Court deems just and proper.

7

KLEHR | HARRISON | HARVEY |
BRANZBURG LLP

By: _____
   Jeffrey Kurtzman, Esquire
   1835 Market St. Ste. 1400
   Philadelphia, PA  19103
   Telephone:  (215) 569-4493

Counsel for John Irwin,
Debtor and Debtor-in-Possession

MAUREEN P. STEADY, ESQ.

By: _____
   Maureen P. Steady, Esquire
   Pavilions at Greentree
   12000 Lincoln Drive West, Suite 208
   Marlton, NJ  08053
   Telephone:  (856) 396-0540

Counsel for Jacklin Associates, Inc.,
Debtor and Debtor-in-Possession

8