**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:                                        :
     **JOHN IRWIN,**                          :          **Chapter 11**
                              :
     **Debtor.**                              :
                              :          **Bky. No. 10-14407 ELF**
                              :

# M E M O R A N D U M

## I. INTRODUCTION

John Irwin ("the Debtor") is an accountant and a principal of Jacklin Associates, Inc.

("Jacklin"), a company that provides accounting and business consulting services.  On May 27,

2010, he filed this chapter 11 bankruptcy case.[1]

As described in an earlier Memorandum,[2] the Debtor and Jacklin provided services to

Joseph Forte and Joseph Forte, L.P. over a fifteen (15) year period prior to the commencement of

this bankruptcy case.  For several of those years, Forte was engaged in a Ponzi scheme.  Forte's

activities resulted in the appointment of Marion A. Hecht, as a court-appointed Receiver ("the

Receiver") for both Joseph Forte individually and his business entity (collectively referred to as

"Forte").

Prior to the filing of this bankruptcy case, the Receiver filed a lawsuit asserting claims

against the Debtor, seeking to recover money or property that she contends the Debtor obtained

---

[1]     Jacklin, too, filed a chapter 11 case on May 27, 2010.  The two chapter 11 cases were jointly administered until August 11, 2011, when the Jacklin bankruptcy case was dismissed.

[2]     See In re Irwin, 2010 WL 4976226, at *1 (Bankr. E.D. Pa. Dec. 2, 2010).

-1-

through his alleged participation in Forte's Ponzi scheme.[3]  That lawsuit is stayed due to the

Debtors' bankruptcy filing.  See 11 U.S.C. §362(a).  The Receiver has filed a proof of claim in

the Debtor's chapter 11 case in the amount of "approximately $34 million" (Proof of Claim No.

8), which makes her the largest creditor in this bankruptcy case.[4]

On July 19, 2011, the Receiver filed a Motion for a Declaration that the Automatic Stay

Does Not Apply or for Relief from the Stay ("the Motion").  (Doc. # 235).  The Receiver seeks

relief in order to assert claims against:

> (1) the Debtor's wife, Lucy Irwin ("Mrs. Irwin"), and daughters Karen
> McAteer, Nancy Phillips and Carol Sander – to recover property the
> Debtor allegedly transferred to them;
>
> (2) the Debtor – to recover from the Debtor's IRA retirement account ("the
> IRA");[5] and
>
> (3) the Debtor and Mrs. Irwin jointly – to reach property that they own as
> tenants by the entireties.[6]

The claims that the Receiver seeks to prosecute in another forum are based on the

---

[3]     See Hecht v. Irwin, No. 10-cv-1371 (E.D. Pa.).  Jacklin, too, is a defendant in the
Receiver's district court action.  The action also was stayed as to Jacklin during the pendency of its
bankruptcy case.

[4]     The Receiver also has filed an adversary proceeding seeking a determination that the
debt is nondischargeable under 11 U.S.C. §523(a)(2), (4), (6) and (19).  (See Adv. No. 10-0348, Doc. #
1).

[5]     The IRA consists of several accounts that the Debtor has disclosed were rolled into a
single account.  The Debtor has valued the IRA at $394,895.00.  (Debtor's Amended Schedule C, Doc. #
206).

[6]     The Debtor scheduled two pieces of real estate in his Amended Schedule A as jointly
owned with Mrs. Irwin as tenants by entireties: (1) his residence in Villanova, PA, valued at $800,000.00
and owned free and clear of liens; and (2) a property in Arizona valued at $507,000.00 and encumbered
by $340,950.00 mortgage.  The Debtor also listed a jointly owned, unencumbered timeshare in Arizona,
valued at $22,000.00.  (Doc. # 41).

following legal theory:

- Forte transferred assets to the Debtor that were the fruits of Forte's illegal Ponzi scheme;

- the Debtor assisted Forte in carrying out Forte's illegal enterprise;

- the assets Forte transferred to the Debtor should be impressed with a constructive trust in favor of the Receiver;[7]

- as a result of the constructive trust, the Receiver may recover from the subsequent transferees the property Forte transferred to the Debtor, or the value of the transferred property, because, by virtue of the constructive trust, the transferees received nothing more than bare legal title and not a beneficial interest in the property.[8]

The Debtor, Mrs. Irwin and Carol Sander filed responses in opposition to the Motion.[9]  A

---

[7]    A constructive trust is a type of equitable remedy that courts impose when the plaintiff establishes certain types of unjust enrichment.  E.g., Askew v. Trustees of Gen. Assembly of Church of Lord Jesus Christ of Apostolic Faith, Inc., 644 F. Supp. 2d 584, 588 n.3 (E.D. Pa. 2009); In re Kamand Constr., Inc., 298 B.R. 251, 255 (Bankr. M.D. Pa. 2003); In re Yasipour, 238 B.R. 289, 292 (Bankr. M.D. Pa. 1999).

[8]    With respect to the Receiver's request for relief against the Debtor, the nature of her legal theory is especially significant.  The assets she wishes to pursue were claimed as exempt by the Debtor.  The Receiver filed an objection to the Debtor's claim of exemption.  By agreement an order was entered overruling the Receiver's objection, without prejudice to any claims the Receiver may have that the Receiver, and not the Debtor, is the lawful owner of the assets through a constructive trust or any other legal theory available to the Receiver under applicable nonbankruptcy law.  See Order dated July 20, 2011 (Doc. # 244).  Ordinarily, there would be no reason to grant stay relief to permit an unsecured creditor to pursue a debtor's exempt assets.  Here, however, the creditor's theory is that under applicable nonbankruptcy law, the Debtor lacks a beneficial interest in the property at issue.

[9]    At the hearing, I raised the issue of the standing of Mrs. Irwin and Carol Sander to object to the Receiver's request for relief from the automatic stay.  In response, they asserted that they are creditors who have contingent claims against the Debtor.  After Mrs. Irwin and Carol Sander articulated this argument, the Receiver stated that she did not contest their standing to be heard in opposition to the Motion.  See generally In re Global Indus. Technologies, 645 F.3d 201, 210-11 (3d Cir. 2011) (standing in bankruptcy cases is governed by 11 U.S.C. §1109(b) which is construed to create a broad right of participation by anyone who has a legally protected interest that could be affected by the bankruptcy proceeding).

hearing on the Motion was held on August 10, 2011.[10]

The relief requested by the Receiver can be divided into two distinct categories based on the identity of the potential defendants of the alleged claims.

First, the Receiver asserts that she wishes to pursue claims against Mrs. Irwin (in her individual capacity) and the Debtor's three daughters. The Receiver asserts that these claims fall outside the scope of 11 U.S.C. §362(a) and thus, the automatic stay does not apply to these non-debtor defendants. For the reasons set forth below, I agree and will grant the Receiver the relief she seeks: the entry of an order determining that the automatic stay does not apply to these claims.

Second, the Receiver wishes to pursue claims against the Debtor (individually) and the Debtor and Mrs. Irwin (jointly) for assets that are exempt from the bankruptcy estate or jointly held as entireties property, respectively. These claims stand on different footing. The Receiver acknowledges that prosecution of these claims against the Debtor is restrained by the automatic stay, 11 U.S.C. §362(a). Therefore, the issue presented is not whether the stay applies, but whether Receiver has established "cause" for relief from the automatic stay under 11 U.S.C. §362(d). As explained below, I conclude that the Receiver has not met her burden and cause does not exist presently to grant the relief the Receiver seeks with respect to the IRA and the Debtor's jointly-owned property. The Motion will be denied insofar as the Receiver seeks relief

---

[10]    When the Motion was filed, the Jacklin chapter 11 case also was pending in this court. The Receiver requested the same relief with respect to her claims arising from property that Forte transferred to Jacklin as she did with respect to property that Forte transferred to the Debtor. The Jacklin case was dismissed on the day of the hearing on the Motion. With the dismissal of the Jacklin bankruptcy case, that aspect of the Motion is moot. See 11 U.S.C. §362(c)(2).

to prosecute her claims against the Debtor and the Debtor and his wife jointly.

## II.  THE AUTOMATIC STAY DOES NOT APPLY TO THE CLAIMS THE RECEIVER PROPOSES TO BRING AGAINST MRS. IRWIN, KAREN McATEER,  NANCY PHILLIPS AND CAROL SANDER

The Receiver's request for a determination that the automatic stay does not apply, insofar as she intends to pursue claims directly against the Debtor's wife and daughters, is grounded in the black letter bankruptcy principle that §362(a) does not create a general, automatic stay of a creditor's right to assert claims against non-debtor parties who are related to the debtor in some fashion.  See, e.g., Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1205 (3d Cir. 1991) ("the automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor"); accord Fox Valley Const. Workers Fringe Ben. Funds v. Pride of Fox Masonry and Expert Restorations, 140 F.3d 661, 666 (7th Cir. 1998); Winters By and Through McMahon v. George Mason Bank, 94 F.3d 130, 133 (4th Cir. 1996); In re Gronczewski, 444 B.R. 526, 530 (Bankr. E.D. Pa. 2011).

> [T]he stay must, in some sense, be "earned" by the beneficiary of the stay submitting to the invasive authority of the bankruptcy court into his private financial life .  .  . [thus] assur[ing] a comprehensive commitment of the beneficiary's assets to the satisfaction of his obligations, a fundamental aspect of the debtor/creditor readjustment process that justifies the extraordinary effect of a stay of creditor pursuit of self-interest."

In re Saxby's Coffee Worldwide, LLC, 440 B.R. 369, 378 (Bankr. E.D. Pa. 2009) (quoting In re Juneau's Builders Ctr., Inc., 57 B.R. 254, 256 (Bankr. M.D. La.1986)).

In addition, the property the Receiver seeks to recover – the property the Debtor transferred pre-petition to Mrs. Irwin (individually), Karen McAteer, Nancy Phillips and Carol

Sander (collectively, "the Non-Debtor Targets") – is not property of the bankruptcy estate.  <u>See</u> 11 U.S.C. §541(a)(1) (bankruptcy estate consists of all property interests of debtor "as of the commencement of the case").  Thus, on its face, the statute's general prohibition against attempting to "obtain possession of" or "exercis[ing] control over" property of the estate, <u>see</u> 11 U.S.C. §362(a)(3), does not apply.[11]

Notwithstanding the foregoing, the Non-Debtor Targets present several arguments to support their contention that, in the circumstances presented here, the automatic stay applies to the claims the Receiver wishes to assert against them.[12]  However, none of their arguments is persuasive.  I will discuss each of them below.

### A.  11 U.S.C. §362(a)(3)

The Non-Debtor Targets dispute the premise stated above, <u>i.e.</u>, that the pre-petition transfers by the Debtor establish that the prosecution of the Receiver's claims against them falls outside the scope of 11 U.S.C. §362(a)(3).

To understand their argument, it helps to remember that the Receiver is pursuing assets that were transferred more than once – first from Joseph Forte or his entity to the Debtor ("the Forte Transfers") and later from the Debtor to one of the Non-Debtor Targets ("the Debtor's Transfers").  As mentioned earlier, the Receiver's constructive trust theory is grounded in the

---

[11]     Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

[12]     The Debtor objects to the Receiver's request for relief to proceed against him, but has not disputed the request to proceed against the non-debtors.

illegality of Forte's conduct prior to the Forte Transfers.  The Receiver posits that a beneficial

interest in the property remains with the Receivership, even after the Forte Transfers, by virtue of

the constructive trust the Receiver seeks to impose.  Thus, according to the Receiver, when the

subsequent Debtor's Transfers took place, the beneficial interest in the property remained with

the Receivership.

The Non-Debtor Targets also point out, correctly, that regardless of the merits of the

Receiver's constructive trust theory:

- the Debtor's Transfers are distinct property transfers that can be examined
  separately for avoidance claims;

- prior to the filing of the bankruptcy petition, state law based fraudulent
  transfer claims were available to the Receiver,  12 Pa. C.S. §§5101-5110; and

- upon the filing of the bankruptcy case, transfer avoidance claims inured to the
  benefit of the bankruptcy estate, see 11 U.S.C. §§544, 547, 548.

The Non-Debtor Targets assume that, if granted relief from the automatic stay, the

Receiver not only will seek to recover property based on the constructive trust theory that is tied

to the Forte Transfers, but also will assert state law fraudulent transfer claims arising from the

Debtor's Transfers.  The Non-Debtor Targets suggest that the transfer avoidance claims available

to the bankruptcy estate under chapter 5 of the Bankruptcy Code are estate property and

therefore, permitting the Receiver to proceed on her state law avoidance claims would violate 11

U.S.C. §362(a)(3).[13]  In other words, the Non-Debtor Targets conceptualize the Receiver's

---

[13]       The Debtor has not indicated whether he intends to initiate an adversary proceeding to
set aside the pre-petition transfers made to his wife and children.  However, he also has not made any
representation to the court that he has examined the issue and that, in his fiduciary capacity and in the
exercise of his business judgment, he has concluded the avoidance claims should not be brought.
Further, if this chapter 11 case is converted to chapter 7 prior to May 2012 when the statute of limitations

(continued...)

prosecution of her fraudulent transfer claims as the prosecution of the bankruptcy estate's fraudulent transfer claims as well, and therefore, the exercise or control of estate property.

The underlying premise of the Non-Debtor Targets' analysis is that the bankruptcy estate's right to bring transfer avoidance claims is property of the bankruptcy estate under 11 U.S.C. §541(a), thereby bringing §362(a)(3) into play.  However, the merits of that legal proposition are questionable.  See Gronczewski, 444 B.R. at 531 n.3.  In the end, however, I need not decide the issue.

At the hearing on the Motion, the Receiver agreed to limit her request for relief.  She seeks authority only to assert a constructive trust claim against the Non-Debtor Targets arising from the Forte Transfers.  She has agreed that, if granted relief, she will not seek to recover based on the theory that the Non-Debtor Targets are liable in their capacities as initial transferees of the Debtor's Transfers.

The Receiver's concession resolves any concerns that the grant of relief would violate 11 U.S.C. §362(a)(3) – assuming that provision even applies to the fraudulent transfer claims that the Receiver may be entitled to raise in connection with the Debtor's Transfers.[14]

_____

[13](...continued)
under 11 U.S.C. §546 will expire, a chapter 7 trustee also would have the opportunity to consider whether it is in the bankruptcy estate's best interest to pursue avoidance claims against the Non-Debtor Targets.  Therefore, I must conclude that transfer avoidance litigation by the bankruptcy estate against the Non-Debtor Targets is viable.

[14]     To be clear on the issue, even though a number of courts have concluded that 11 U.S.C. §362(a)(3) does not restrain a creditor from asserting a transfer avoidance claim that the bankruptcy estate may also be entitled to bring, there nonetheless "is a judicial consensus that the Bankruptcy Code provides that after the commencement of a bankruptcy case, only the bankruptcy trustee may bring an action to avoid a preference or to set aside a pre-petition fraudulent transfer made by the bankruptcy debtor."  Gronczewski, 444 B.R. at 534 (citing authorities).  Under this view, a creditor's prosecution of

(continued...)

In reaching this conclusion, I recognize that permitting the Receiver to attempt to recover assets transferred in the Forte Transfers based on a constructive trust theory (in which the Non-Debtor Targets' asserted liability to the Receiver is based on their status as subsequent transferees, not initial transferees) may put the Receiver in competition with the bankruptcy estate, if the bankruptcy estate later seeks to recover those same assets from the Non-Debtor Targets based on "initial transferee" avoidance theories under the Bankruptcy Code arising from the Debtor's Transactions. However, I do not see this competition as implicating the automatic stay. I am aware of no legal principle that makes a bankruptcy estate a "super creditor" and thus, requires the third party be restrained from proceeding against an obligor simply because a bankruptcy estate holds a distinct claim against the obligor. See In re Reliance Acceptance Group, Inc., 235 B.R. 548, 561-62 (D. Del. 1999); see also In re Salem Baptist Church of Jenkintown, 2011 WL 3792361, at *9 (Bankr. E.D. Pa. Aug. 25, 2011). Consider, for example, a situation in which a non-debtor who has limited assets owes money to a bankruptcy estate and to an independent third party. This hypothetical and the instant case are simply examples of a situation in which two creditors (one of which happens to be a bankruptcy estate) may compete on a level playing field in attempting to be first in time to realize the limited assets of a defendant-obligor.

---

[14](...continued)
a fraudulent transfer claim against a transferee of the debtor is not stayed "automatically," but is "subject to being stayed by the [bankruptcy] court through an appropriate proceeding initiated by a party [in interest] with standing." Gronczewski, 444 B.R. at 534 (emphasis in original).

## B.  <u>McCartney v. Integra Nat'l Bank</u>

The Non-Debtor Targets' next argument is that the automatic stay applies to the

Receiver's claims against them based on the principles stated in <u>McCartney v. Integra Nat'l</u>

<u>Bank</u>, 106 F.3d 506 (3d Cir. 1997).[15]  In <u>McCartney</u>, the Court of Appeals observed that even

though the automatic stay generally does not apply to actions against third parties, courts have

extended the stay to third parties in "unusual circumstances."  Unusual circumstances exist if

"there is such identity between the debtor and the third-party defendant that the debtor may be

said to be the real party defendant and that a judgment against the third-party defendant will in

effect be a judgment or finding against the debtor."  <u>Id.</u> at 510 (quoting <u>A.H. Robins Co., Inc. v.</u>

<u>Piccinin</u>, 788 F.2d 994, 999 (4th Cir. 1986)).

The Non-Debtor Targets assert that <u>McCartney</u> applies here for two independent reasons.


### 1.  collateral estoppel

The Non-Debtor Targets suggest that if the Receiver is successful in impressing a

constructive trust on the assets the Debtor received from Forte, the consequential finding that the

Debtor did not receive a beneficial interest in the assets as a result of the Forte Transfers would

preclude the bankruptcy estate from later attempting to set aside the Debtor's Transfers under 11

U.S.C. §§544, 547, 548, 550.  In this respect, the Non-Debtor Targets contend that the entry of a

judgment against them would, in effect, be a judgment against the bankruptcy estate and thus, the

---

[15]    This argument is similar to the one discussed in Part II.A. because it focuses on the
transfer avoidance claims that the bankruptcy estate may have against the Non-Debtor Targets, but is a
bit more complex.

proposed action against the Non-Debtor Targets is a <u>de facto</u> action against the bankruptcy estate.

<u>See generally</u> 11 U.S.C. §362(a)(1) (restraining the commencement or continuation of legal

action against the debtor based on a pre-petition debt).

To evaluate the merits of the Non-Debtor's argument under <u>McCartney</u>, I must consider

the likelihood (or risk) that following the Receiver's success in her proposed initial lawsuit, the

doctrine of collateral estoppel would be applied against the bankruptcy estate in a later transfer

avoidance proceeding.[16]  Because I consider the applicability of collateral estoppel to be a

minimal risk, I conclude that the Non-Debtor Targets' argument fails.

The applicability of the doctrine of collateral estoppel to an issue determined in a prior

federal proceeding is governed by principles of federal common law in a subsequent federal

action.[17]  <u>Taylor v. Sturgell</u>, 553 U.S. 880, 891 (2008); <u>In re Docteroff</u>, 133 F.3d 210, 214 (3d

Cir. 1997).  Collateral estoppel requires the presence of the following four elements:

1.  the identical issue was decided in a prior adjudication;

2.  there was a final judgment on the merits;

3.  the party against whom the bar is asserted was a party or in privity[18] with a
    party to the prior adjudication; and

4.  the party against whom the bar is asserted had a full and fair opportunity to
    litigate the issue in question.

---

[16]      Collateral estoppel is also referred to as "issue preclusion."  I will use the terms
interchangeably.

[17]      Presumably, the Receiver intends to file her proposed actions against the Non-Debtor
Targets in the receivership court, which is the federal district court.  <u>See</u> n.3, <u>supra</u>.

[18]      For further discussion regarding the concept of "privity," <u>see</u> n.19, <u>infra</u>.

-11-

Bd. of Trs. of Trucking Employees of No. Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495, 505

(3d Cir. 1992); accord Alevras v. Tocopina, 226 Fed App'x 222, 227-28 (3d Cir. 2010) (non-

precedential); see also Docteroff, 133 F.3d at 214.

The application of collateral estoppel in a later transfer avoidance proceeding initiated on

behalf of the bankruptcy estate is unlikely because the third element necessary for collateral

estoppel appears to be absent here.  The Debtor will not be a party to the prior action (i.e., the

action the Receiver proposes to bring) because, as explained below, at this time, I will not grant

relief from the stay for the Receiver to prosecute her claims against him.  The issue then, is

whether the Debtor may be bound by the determination in the litigation between the Receiver and

the Non-Debtor Targets without being a party to the litigation.

In Taylor, the Supreme Court recognized six categories of non-party relationships that are

sufficient to justify preclusion and that serve as exceptions to the general rule that "one is not

bound by a judgment in personam in a litigation in which he is not designated as a party or to

which he has not been made a party by service of process," Taylor, 553 U.S. at 893 (quoting

Hansberry v. Lee, 311 U.S. 32, 40 (1940)).  The six categories are:

1. the nonparty agrees to be bound by a prior judicial determination between other
   parties;

2. a substantive legal relationship exists that binds the nonparty;[19]

---

[19]      This second exception in the Supreme Court's list encompasses what courts traditionally
have referred to as "privity."  In fact, the existence of "privity" is frequently articulated as an element of
the test for preclusion, rather than exception to the requirement that the parties in the two actions are
identical.  Whether conceptualized as an element of the test for collateral estoppel or an exception to the
"identity of parties" requirement, the "privity" concept refers to "mutual or successive relationships to
the same right of property, or such an identification of interest of one person with another as to represent
the same legal right."  Greenway Ctr. Inc. v. Essex Ins. Co., 475 F.3d 139 (3d Cir. 2007) (quoting

(continued...)

3.    the nonparty was adequately represented in the prior litigation by someone with the same interests who was a party;

4.    the nonparty assumed control of the prior litigation;

5.    the nonparty is the proxy or agent of a party to the prior litigation;

6.    A special statutory scheme expressly forecloses subsequent litigation by the nonparty.

See Taylor, 553 U.S. at 893-95; In re Montgomery Ward, LLC, 634 F.3d 732, 737-38 & n.5 (3d

Cir. 2011); Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.,571 F.3d 299 (3d Cir.

2009).

The only exception that might possibly apply here is the third exception:[20] the potential

that the Non-Debtor Targets may adequately represent the bankruptcy estate's interests in the

"constructive trust" litigation.

Perhaps a vigorous defense by the Non-Debtor Targets, combined with their common

interest with the bankruptcy estate in disputing the existence of a constructive trust, provide some

---

[19](...continued)
Ammon v. McCloskey, 440 Pa.Super. 251, 261, 655 A.2d 549 (1995) (quoting Black's Law Dictionary (5th ed. 1979))); see also 18A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 4449 (West 2011).

I also note that in Taylor, the Supreme Court pointed out that the term "privity" had acquired multiple meanings through broad usage. Thus, "to ward off confusion," the Court avoided using the term. Taylor, 128 S.Ct. at 2172 n. 8.

[20]        With respect to the second exception ("traditional privity"), there is no evidence in the record suggesting that the Debtor maintained a substantive legal relationship with the Non-Debtor Targets by retaining any interest or legal right in the property he transferred to them. See Restatement (Second) of Judgments § 43 ("When the owner of property transfers it to another, in general he ceases to be burdened with the legal responsibilities that attend its ownership.").

traction to the argument that determinations in the constructive trust litigation may bind the bankruptcy estate in later transfer avoidance litigation. However, the Supreme Court has cautioned that an alignment of interests, by itself, is not enough to warrant the application of collateral estoppel to a nonparty to the prior litigation. In addition, "either the party [must have] understood herself to be acting in a representative capacity or the original court [must have taken] care to protect the interests of the nonparty." Taylor, 550 U.S. at 900.

In the somewhat convoluted circumstances presented here, I find there are far too many uncertainties to justify the conclusion under McCartney that the bankruptcy stay applies automatically to the legal action that the Receiver intends to bring against the Non-Debtor Targets. The procedural posture of the matter makes the potential application of collateral estoppel speculative. Typically, when a court is asked to evaluate the applicability of preclusion principles, the prior proceeding is a thing of the past and the court in the subsequent action determines the preclusive effect, if any, of the issues previously decided. Here, not only is the first action (the Receiver's action to impress a constructive trust) undecided, but the subsequent action (the bankruptcy estate's transfer avoidance action) has not even been brought. Indeed, it is not even clear that there will ever be a "subsequent action" in which collateral estoppel might be invoked, see n.13, supra. Nor can I predict on this record whether the Non-Debtor Targets will adequately represent the Debtor in the Receiver's action to impress a constructive trust.

In short, it is not sufficiently probable that the Receiver's claims against the Non-Debtor Targets, if successful, will later bind the bankruptcy estate to its detriment to warrant the conclusion that the Receiver's actions against the Non-Debtor Targets are de facto actions against the bankruptcy estate.

-14-

My conclusion is best understood against the backdrop of the observation made by the district court in <u>Stanford v. Foamex, L.P.</u>, 2009 WL 1033607 (E.D. Pa. Apr. 15, 2009).  The <u>Stanford</u> court pointed out that it is not entirely clear whether the <u>McCartney</u> court considered the "unusual circumstances" doctrine to be a judicial gloss on and part of the automatic stay provision itself, 11 U.S.C. §362(a), or a doctrine that supports the entry of a separate injunction issued pursuant to the bankruptcy court's authority under 11 U.S.C. §105(a) to extend the automatic stay to situations not encompassed by §362(a).  <u>Id.</u> at *1 n.7.[21]  I consider it far more likely that the "unusual circumstances" doctrine is a §105(a) concept, rather than an organic part of §362(a).  Applying that principle here, if and when the representative of the bankruptcy estate believes that the prosecution of the Receiver's claims against the Non-Debtor Targets poses a sufficient danger to the bankruptcy estate, the estate representative can seek relief in this court.  But such relief does not flow automatically from §362(a).[22]

## 2.  Rule 19

The Non-Debtor Targets also argue that the automatic stay restrains the Receiver from instituting the action she proposes to bring against them because the bankruptcy estate is an indispensable party in that action.  The Non-Debtor Targets assume, as I have, that the Receiver's

---

[21]    If the "unusual circumstances" doctrine is grounded in §105(a), the extension of the stay by injunction would require the initiation of an adversary proceeding, <u>see</u> Fed. R. Bankr. P. 7001(7).

[22]    To the extent that the Non-Debtor Targets, by their response to the Motion, are requesting the entry of an affirmative injunction extending the automatic stay, their request is procedurally defective.  <u>See</u> n.21, <u>supra</u>.

-15-

proposed action will be filed in the federal district court and they cite Fed. R. Bankr. P. 19 in support of their argument.

Under Rule 19, a court must first determine whether a party is "necessary" under Rule 19(a). See General Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007). Only if a party is "necessary" under Rule 19(a)(1), must the court determine whether the party is "indispensable" under Rule 19(b).

The Non-Debtor Targets make two distinct arguments under Rule 19.

First, citing In re Slack-Horner Foundries, Inc., 971 F.2d 577 (10th Cir. 1992), the Non-Debtor Targets contend that, as a matter of substantive law, the Receiver cannot seek to recover from them without setting aside the Forte Transfers, which requires the joinder of the bankruptcy estate.[23] See Fed. R. Bankr. P. 19(a)(1)(A) (party is necessary if, "in that person's absence, the court cannot accord complete relief among existing parties").

Second, the Non-Debtor Targets raise a concern that if the Receiver's claim against them is successful and the bankruptcy estate is not subject to collateral estoppel, they may be subject to double recovery for the same debt – first by the Receiver on a constructive trust theory and a second time by the bankruptcy estate on a fraudulent transfer theory.[24] Consequently, they

---

[23] In their Memoranda, both Carol Sander and Lucy Irwin acknowledge that Slack-Horner has not been followed by other courts, is not binding on this court and there is no binding precedent on the issue in this Circuit.

[24] Thus, it appears that there is an inverse relationship between the Non-Debtor Targets' collateral estoppel argument and the second prong of their Rule 19/risk of double recovery argument. The stronger the likelihood that the bankruptcy estate later will be precluded by the findings in the constructive trust litigation, the less likely is the risk of double recovery and vice versa. Given my conclusion regarding the collateral estoppel issue, see Part II.B.1., supra, the Non-Debtor Targets' concern about their exposure to double recovery is understandable.

suggest that, under Rule 19(a)(1)(B)(ii), the bankruptcy estate is a necessary party in the actions

that the Receiver proposes to bring, as well as an indispensable party under Rule 19(b)(1).[25]

Through these related but distinct Rule 19 arguments, the Non-Debtor Targets assert that

the Receiver's proposed actions against them are, in effect, actions against the bankruptcy estate

and therefore, under their reading of <u>McCartney</u>, are subject to the automatic stay.  <u>E.g.</u>, 11

U.S.C. §362(a)(1).

Perhaps the Non-Debtor Targets are correct in their view that Rule 19 bars the action the

Receiver proposes to prosecute against them.  However, I fail to see how the existence of a

meritorious Rule 19 defense to an action brought by one non-debtor against another non-debtor

provides a justification for construing 11 U.S.C. §362(a) as <u>automatically</u> staying the action.

If <u>Slack-Horner</u> is good law and the Receiver's action against the Non-Debtor Targets is

fatally flawed under substantive law without the joinder of the bankruptcy estate, no harm will

befall the bankruptcy estate so as to justify the "extension" of the automatic stay as contemplated

by the <u>McCartney</u> court.  If <u>Slack-Horner</u> is not good law, the bankruptcy estate need not be

joined in the Receiver's litigation and the only possible detriment to the bankruptcy estate arises

from the application of collateral estoppel, an issue already addressed in Part II.B.1 above.

As for the risk that the Non-Debtor Targets may be subject to double recovery, while the

Non-Debtor Targets present a credible and sympathetic argument, I fail to see how the risk of

---

[25]      In determining whether a party is "necessary" under Rule 19(a)(1)(B)(ii), the court must
decide whether continuation of the action would expose named parties to "a substantial risk of incurring
double, multiple, or otherwise inconsistent obligations by reason of the claimed interest [relating to the
subject matter of the action]."  Under Rule 19(b), the court may dismiss an action if a necessary party
cannot be joined after considering various factors, including the extent that the party's absence might
prejudice existing parties.

double recovery impairs the rights of the bankruptcy estate in a manner that requires the automatic extension of the automatic stay to the action that the Receiver proposes to bring against them.

At best, the Non-Debtor Targets' argument suggests only that the Receiver's effort to proceed against them may be futile because, even if the stay does not apply to the Receiver's action against Non-Debtor Targets, the Receiver's action cannot go forward without the joinder of the bankruptcy estate.  However, the existence of impediments to the Receiver's legal strategy in pursuing claims against non-debtor parties bears no logical relation to the scope of the automatic stay.

The Non-Debtor Targets are presenting their Rule 19 arguments to the wrong court.  If the bankruptcy estate is a necessary party in the action that the Receiver brings in the district court, the Non-Debtor Targets may present that objection to the district court.  The merits of that argument has no effect on the scope of the automatic stay in a bankruptcy filed by the purported necessary party.  Fed. R. Bankr. P. 19 does not expand the scope of the automatic stay, 11 U.S.C. §362(a).[26]

---

[26]      The Non-Debtor Targets present two other arguments that can be disposed of quickly.

First, they contend that the automatic stay applies because the proposed litigation would require detailed discovery about the Debtor's assets and liabilities.  However, it is well accepted that the automatic stay does not prevent discovery aimed at a debtor as long as the discovery pertained to claims and defenses of a non-debtor party.  E.g., America Online, Inc. v. CN Productions, Inc., 272 B.R. 879, 882 n.6 (E.D. Va. 2002) (citing authorities).

Second, they invoke the doctrine of judicial estoppel.  They assert that in an earlier motion, the Receiver was permitted to conduct discovery regarding the Debtor's Transfers, but now seeks to use the information she obtained to proceed against the Non-Debtor Targets for her own benefit, employing the constructive trust legal theory.

(continued...)

## III.  THE RECEIVER HAS NOT ESTABLISHED CAUSE FOR GRANTING RELIEF FROM STAY AS TO THE DEBTOR OR THE DEBTOR AND MRS. IRWIN JOINTLY

As stated earlier, there is no dispute that the automatic stay applies to the Receiver's claim for recovery of assets that she contends the Debtor received as part of the Forte Transfers and which are now part of his IRA, and assets owned jointly with Mrs. Irwin.  These assets, on their face, were initially property of the bankruptcy estate, were claimed as exempt by the Debtor and remain as property of the Debtor.[27]

Section 362(d) of the Bankruptcy Code provides, in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by

---

[26](...continued)
The Court of Appeals has concisely summarized the circumstances in which it is appropriate to invoke the doctrine:

> Though there is no rigid test for judicial estoppel, three factors inform a federal court's decision whether to apply it: there must be (1) irreconcilably inconsistent positions;" (2) adopted ... in bad faith; and (3) a showing that ... estoppel ... address[es] the harm and ... no lesser sanction [is] sufficient.

G-I Holdings, Inc v. Reliance Ins. Co., 586 F.3d 247, 262 (3d Cir. 2009) (quoting Chao v. Roy's Constr., Inc., 517 F.3d 180, 186 n.5 (3d Cir. 2008) (internal quotation marks omitted); see also In re Stout, 2009 WL 2912501, at *2 (Bankr. E.D. Pa. Apr. 16, 2009) (per Raslavich, Ch. J.).

I see nothing irreconcilably inconsistent in permitting the Receiver to obtain discovery regarding the Debtor's Transfers and later seeking relief to pursue the same assets under a different legal theory.  Further, there is nothing in the record that suggests that the Receiver was acting in bad faith when she sought leave under Fed. R. Bankr. P. 2004 to conduct discovery.

[27]      The Receiver filed an objection to the Debtor's claim of exemption.  By agreement an order was entered overruling the Receiver's objection, without prejudice to any claims the Receiver may have that the Receiver, and not the Debtor, is the lawful owner of the assets through a constructive trust or any other legal theory available to the Receiver under applicable nonbankruptcy law.  See Order dated July 20, 2011 (Doc. # 244).

terminating, annulling, modifying, or conditioning such stay—

> (1) for cause, including the lack of adequate protection of an interest in
> property of such party in interest . . . .

11 U.S.C. §362(d).

A distinct body of law has developed in applying the standard of "cause" under

§362(d)(1) when relief from the automatic stay is requested by an unsecured creditor, such as the

Receiver.

Courts often state that an unsecured creditor is entitled to relief from an automatic stay

only in "extraordinary circumstances."  E.g., In re Brown, 311 B.R. 409, 413 (E.D. Pa. 2004)

(citing cases).  Generally speaking, this is an accurate statement because, usually, granting stay

relief to an unsecured creditor would contravene the purposes of the stay.  This is so because:

> 1. one of the purposes of the automatic stay is to give the debtor a respite from
>    the time and expense of responding to the collection efforts and litigation
>    initiated by creditors;
>
> 2. if the claim will be discharged in a no-asset case, no purpose would be served
>    by further litigation to determine the existence of and the amount of the
>    liability; and
>
> 3. in a case involving the distribution of assets in the bankruptcy case, most
>    disputes relating to the validity and amount of an unsecured creditor's claim
>    can be resolved through the proof of claim process.

In re Chan, 355 B.R. 494, 498 (Bankr. E.D. Pa. 2006) (citing In re Quad Systems Corp., 2001

WL 1843379, *5–*6 (E.D. Pa. Mar. 20, 2001)).

Rather than referring to "extraordinary circumstances" as the test for granting stay relief

to unsecured creditors, it may be somewhat more accurate to describe the court's inquiry as one

in which the court balances the competing interests of the parties – balancing the harms to

-20-

determine whether "the hardship to the [movant] caused by the continuance of the stay outweighs the hardship to the debtor caused by stay modification." E.g., Chan, 355 B.R. at 498 (internal quotations and citations omitted).  Stated slightly differently, the court must compare the equities of freeing the creditor from the restraint of the automatic stay so that it may pursue its claim promptly in another forum against the impact that such relief is likely to have on the bankruptcy process.  This requires the court to consider the "totality of the circumstances."  In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997).  Bankruptcy courts are accorded considerable discretion in considering the competing interests and determining whether cause exists for relief from the automatic stay.  E.g., In re Szymanski, 413 B.R. 232, 253 (Bankr. E.D. Pa. 2009); accord Matter of Holtkamp, 669 F.2d 505, 507 (7th Cir. 1982).

In this case, the assets that the Receiver wishes to pursue have all been exempted from the bankruptcy estate by the Debtor.  Thus, at first blush, it might appear that the Receiver should be freed from restraint of the stay to pursue those assets she claims the Debtor obtained through the Forte Transfers and were the fruit of Forte's fraudulent scheme.  Nonetheless, after considering the present posture of this reorganization case, I conclude that the Receiver has not met her burden of establishing that maintaining the stay in place harms her in a manner that outweighs the potential harm the bankruptcy estate would suffer if relief is granted.

I reach this conclusion based on two bankruptcy policy considerations.

First, it has not yet been determined whether the Debtor will be able to confirm a plan and obtain a chapter 11 discharge and, if so, whether the Receiver will be successful in obtaining a determination in her pending adversary proceeding that her claim is nondischargeable.   If a plan is confirmed, the dischargeability issue is a critical factor in assessing the competing equities and

that issue presently is unresolved.  As I observed in an earlier decision:

> The delegation to the bankruptcy court of the exclusive authority to make
> dischargeability determinations under § 523(a)(2), (4) and (6) is a significant
> consideration in evaluating a creditor's request for relief from the stay to litigate in
> another forum the merits of a claim that may be nondischargeable under one or more
> of those subsections. In such cases, ordinarily, a bankruptcy court should deny a
> creditor's motion for relief under § 362(d)(1) and compel the creditor, who wishes to
> prove that its claim is derived from the debtor's fraudulent conduct, to file a
> dischargeability complaint and litigate the issue in the bankruptcy court.

Chan, 355 B.R. at 500.

Second, the terms of the Debtor's plan are unsettled.  It remains possible that he will

propose to contribute to the reorganization some of the exempt assets that the Receiver wishes to

pursue.  If so, the Receiver's claim that she, and not the Debtor, "owns" the assets may be

sufficiently tied to the reorganization process as to render the bankruptcy court the appropriate

forum for resolution of this dispute.

Due to the current posture of this reorganization case, I am unprepared to conclude at this

time that the Receiver's interests outweigh those of the Debtor.  As a result, I will deny the

Motion insofar as the Receiver wishes to proceed against property owned by the Debtor, either

individually or jointly with Mrs. Irwin.


## IV.  CONCLUSION

The legal issues arising from the Motion were fairly abstract.  After working through

them, I have held that the fundamental bankruptcy principle  –  that §362(a) of the Bankruptcy

Code generally does not restrain actions by one non-debtor against another non-debtor  —  is

decisive here and therefore, prosecution of the Receiver's claims against the Non-Debtor Targets

is not subject to the automatic stay.  Yet, the Receiver's victory on the issue may be a hollow one because she may encounter legal obstacles under Fed. R. Civ. P. 19 in any actions she brings against the Non-Debtor Targets.  Further, the Receiver's request for relief from the automatic stay to initiate legal proceedings to satisfy her claim from the Debtor's property has been denied.

So, one might fairly ask whether the resolution of this contested matter "advanced the ball" in this bankruptcy case.  What has been accomplished?

The Motion has served a purpose.  In focusing the parties' and the court's attention  on the competing equities, the Motion has highlighted the need for closure in this reorganization case.

The Debtor filed this case almost eighteen (18) months ago.  He filed a plan and disclosure statement on May 24, 2011 and a motion for approval of the disclosure statement on June 15, 2011.  At the hearing on the disclosure statement, the Debtor suggested that his efforts to negotiate a consensual plan were ongoing and, in any event, he fully expected to propose material modifications to the initial plan.

The denial of the Receiver's request for relief to proceed against the Debtor's assets reflects my view that the reorganization process has progressed sufficiently so that the Debtor should be given an opportunity to see it to its conclusion.  However, the "shelf life" of this case is nearing its end.  This chapter 11 proceeding has reached the stage where it will be appropriate, <u>in the very near future</u>, to determine whether the Debtor can propose a confirmable reorganization plan and, if not, whether this case should be converted to chapter 7 or dismissed. If there are any further significant detours or delays in the confirmation process, I am prepared to convert or

-23-

dismiss this case.[28]  The point here is that while the ruling on the Motion may have the legal

effect of maintaining the stay as to the Debtor and the practical effect of continuing to restrain the

Receiver from proceeding against  the Non-Debtor Targets (due to the potential Rule 19

defenses), it is unlikely that the Receiver will continue to be delayed for a significant additional

period of time.

      For the reasons stated above, the Motion will be granted in part and denied in part.  An

order consistent with this Memorandum will be entered.

**Date:**  <u>September 15, 2011</u>

          **ERIC L. FRANK**
          **U.S. BANKRUPTCY JUDGE**

---

[28]     If the case is dismissed, the stay will terminate.  <u>See</u> 11 U.S.C. §362(c)(2).  If the case is
converted and the Receiver renews her motion, the chapter 7 trustee will have to make a prompt
determination whether it remains in the interest of the bankruptcy estate to seek to set aside the Debtor's
Transfers or to contest the Receiver's constructive trust legal theory.