**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| JOHN N. IRWIN, | : | Bky. No. 10-14407 ELF |
| | : | |
| Debtor. | : | |

# M E M O R A N D U M

## I.  INTRODUCTION

In this individual chapter 11 case, the debtor's confirmed chapter 11 plan provided, <u>inter alia</u>, that a liquidating agent would liquidate the debtor's ownership interest in several entities and distribute the proceeds to creditors in accordance with the plan.  After commencement of the bankruptcy case, but prior to confirmation of the plan, two (2) of those entities made income distributions to the debtor.

The liquidating agent has filed a motion seeking entry of an order compelling the debtor to pay over those pre-confirmation distributions.  The debtor resists making the payment on the ground that the confirmed plan required only the surrender of the debtor's ownership interest in the entities and not the prior, pre-confirmation distributions.

Resolution of this dispute requires interpretation of the confirmed plan.[1]

As explained below, I conclude that the confirmed plan in this case requires the debtor to pay pre-confirmation distributions to the liquidating agent that he retained as of the effective

---

[1] It is well settled that a determination of the meaning of the provisions of confirmed chapter 11 plan is within this court's jurisdiction under 28 U.S.C. §1334(b).  <u>See</u> <u>In re Resorts Int'l, Inc.</u>, 372 F.3d 154, 168-69 (3d Cir. 2004).

date, but that the liquidating agent failed to prove that any such distributions exist. Therefore, the liquidating agent's motion will be denied.

## II. BACKGROUND

### A. Procedural History of the Case

On May 27, 2010, John N. Irwin ("the Debtor") filed a voluntary chapter 11 bankruptcy petition. The same day, the Debtor filed his bankruptcy schedules and statement of financial affairs.[2]

The Debtor filed his individual chapter 11 plan of reorganization and disclosure statement on May 24, 2011. (Doc. #'s 209, 210). The Debtor filed a second amended Plan and Disclosure Statement on November 18, 2011. (Doc. #'s 282, 283).

The Second Amended Plan ("the Plan") was confirmed by order dated January 12, 2012. (Doc. # 296).

### B. The Plan

The Plan is a liquidating plan. The Plan is to be implemented by a liquidating agent who is to collect the assets to be made available for distribution and to distribute the proceeds of those assets according to the Plan. (See Plan Art. 2 & Art. 7).

The Plan contemplates that the funding for distribution to creditors will derive from four

---

[2] The Debtor amended the schedules and statement of financial affairs on July 6, 2010. (Doc. #'s 41-44).

(4) primary sources:

- "Assets" (a defined term, the meaning of which gives rise to the parties' dispute);
- avoidance actions;[3]
- accounts receivable;[4] and
- contribution of personal services income.[5]

The term "Assets" is defined in the Plan as:

> all of the right title and interest of the Debtor in and to the non-exempt property reflected in Schedules A and B of the Debtor's schedules of assets and liabilities, subject in all respects to the Debtor's exemptions as reflected in Schedule C, as amended, of whatever type or nature (real, personal, mixed, tangible or intangible) and the proceeds of Avoidance Actions.

(Plan ¶ 1.8).

Article 7 specifies that the Plan will be implemented "[u]pon and after the Effective Date." The "Effective Date" is a defined term: in the absence of an appeal of the confirmation

---

[3] The Plan authorizes the liquidating agent to bring, prosecute and settle avoidance actions. (Plan ¶¶ 2.1, 7.1(b)).

[4] Accounts Receivable is not a defined term in the Plan, but the Debtor's Schedule B itemized nine (9) receivables payable to the Debtor. The liquidating agent is to collect and distribute Accounts Receivable. (Plan ¶ 7.1(d)).

[5] The Plan provides that the Debtor will contribute 25% of his gross annual personal income in excess of $50,000.00, if any, for three (3) years after the Effective Date of the Plan, for distribution under the Plan. (Plan ¶ 7.1(c)). The Plan also states that "Other Assets," a term which is not defined in the Plan, but which includes "security deposits and other miscellaneous Assets," will be collected and distributed. (Plan ¶ 7.1(g)).

order, the Plan was to become effective "fifteen (15) days after the Confirmation Date." (Plan Article 1.27). The Effective Date occurred on January 27, 2012.

The liquidating agent is authorized to pay administrative claims in full on or after the Effective Date, (Plan, Art. 5.1 & Art. 6.1), and the holders of Allowed Unsecured Claims pro rata from the proceeds resulting from the Sale of the Assets and any recovery resulting from the prosecution of Avoidance Actions on or as soon as is reasonably practicable after the Effective Date. (Id. at Art. 6.5).

### C. Procedural History of the Motion

On March 19, 2012, George L. Miller was appointed as the liquidating agent ("the Liquidating Agent") under the Plan. (Doc. # 303).

On January 20, 2016, the Liquidating Agent filed a Motion to Compel Turnover of Property to the Estate Pursuant to 11 U.S.C. §542 ("the Motion") (Doc. # 458). The Debtor objected to the Motion. (Doc. # 460).[6] An evidentiary hearing was held and concluded on February 24, 2016. After several agreed upon extensions of the briefing schedule, the

---

[6] The Debtor objected to the Motion on the basis that the Liquidating Agent should have brought this dispute before the court by adversary proceeding. A recognized exception exists when turnover is requested from the debtor, in which case a turnover proceeding may be initiated by motion. See In re Reeves, 509 B.R. 35 (Bankr. S.D. Tex. 2014) (citing Fed. R. Bankr. P. 7001(1); 5 Collier on Bankruptcy ¶ 542.02 (Alan N. Resnick, Henry J. Sommer eds., 16th ed. 2016) ("Collier").

In any event, as amplified below, the Liquidating Agent's legal theory is that the Plan obligates the Debtor to pay over to the Liquidating Agent the pre-confirmation distributions the Debtor received. Thus, this contested matter is properly conceptualized as a motion to enforce the confirmed plan, rather than a statutory turnover action under 11 U.S.C. §542.

Liquidating Agent filed his Brief in support of the Motion on May 31, 2016, (doc. # 471), and the Debtor filed his brief in opposition on May 31, 2016, (doc. # 472).

**D.  The Issue**

The Debtor's Amended Schedule B included the Debtor's ownership interest in two (2) entities, Diversified Private Equity Investors, L.P. ("DPEI") and Diversified Private Equity Investors II, L.P. ("DPEI II," together with DPEI, "the Entities").  The Debtor did not claim his interest in the Entities as exempt.  Therefore, it is indisputable that the Debtor's interests in the Entities are "Assets" within the meaning of the Plan.

The Entities paid distributions to their equity owners, including the Debtor.  DPEI paid the Debtor $4,139.00 in 2011 and $2,919.00 in 2012, for a total distribution of $7,058.00.  DPEI II paid the Debtor $18,059.00 in 2011 and $2,789.00 in 2012, for a total distribution of $20,848.00.  The Debtor does not dispute that he received these distributions from the Entities.

The 2011 distributions were made prior to confirmation of the Plan, while the 2012 distributions were made after confirmation of the Plan.  Prior to the filing of the Motion, the Debtor turned over those funds derived from the Entities for 2012; the Debtor concedes that the post-confirmation distributions were collectible by the Liquidating Agent for distribution under the Plan.  Thus, the sole issue is whether pre-confirmation distributions the Debtor received in 2011 ("the Distributions") totaling $22,198.00 are Assets under the Plan that must be delivered to the Liquidating Agent.[7]

---

[7]  The Motion does not involve a demand for the Debtor's membership interests in the entities.  Apparently, the Debtor effectively surrendered those interests to the Liquidating Agent in

(continued...)

## III.  DISCUSSION

### A.  Legal Principles of Plan Interpretation

Interpretation of a confirmed chapter 11 plan is governed by the rules for interpretation of contracts.  In re Shenango Group, Inc., 501 F.3d 338, 344 (3d Cir. 2007) (citing Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581, 588 (9th Cir. 1993) and In re Stratford of Texas, Inc., 635 F.2d 365, 368 (5th Cir. 1981)); In re Dow Corning Corp., 456 F.3d 668, 676 (6th Cir. 2006); In re Heartland Steel, Inc., 389 F.3d 741, 744-45 (7th Cir. 2004).  In doing so, the court should apply the law of the state in which the plan was confirmed.  E.g., In re Thorpe, 540 B.R. 552, 562 (E.D. Pa. 2015) (citing In re Turek, 346 B.R. 350, 354-55 (M.D. Pa. Bankr. 2006)); In re Miller, 253 B.R. 455, 458 (Bankr. N.D. Cal. 2000).

The principles of contract interpretation under Pennsylvania law are well-settled:

> [T]he intent of the parties to a written contract is contained in the writing itself. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence, instead, the meaning of a clear and unequivocal written contract must be determined by its contents alone. Where language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps, silently intended. Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract.

Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 92-93 (3d Cir. 2001) (internal quotations and citations omitted); accord Hullett v. Towers, Perrin, Forster & Crosby, 38 F.3d 107, 111 (3d Cir. 1994); accord Travelers Indem. Co. v. Bailey, 557 U.S. 137, 150 (2009) ("where the plain terms of a court order unambiguously apply . . . they are entitled to their

---

[7](...continued)
accordance with the Plan.  The dispute only involves the 2011 pre-confirmation distributions.

effect").

A term or phrase of a contract is ambiguous if it is reasonably susceptible to different meanings. See USX Corp. v. Penn Cent. Corp., 130 F.3d 562, 566 (3d Cir. 1997); see also McDowell v. Phila. Hous. Auth., 423 F.3d 233, 238 (3d Cir. 2005) (determination whether contract is ambiguous is question of law that court decides by considering whether, from objective standpoint, it is reasonably susceptible to at least two different interpretations). In determining whether an ambiguity exists, the court may examine "the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." Bohler-Uddeholm, 247 F.3d at 93; accord Kroblin Refrig. Xpress, Inc. v. Pitterich, 805 F.2d 96, 101 (3d Cir. 1986). A contract is not ambiguous merely because the parties disagree on its interpretation. MBIA Ins. Corp. v. Royal Indem. Co., 426 F.3d 204, 210 (3d Cir. 2005).

If an ambiguity is found, the parties may offer extrinsic evidence to clarify the meaning of the ambiguity. See, e.g., Einhorn v. Fleming Foods of Penna., Inc., 258 F.3d 192, 194-95 (3d Cir. 2001); Kripp v. Kripp, 849 A.2d 1159, 1163-64 (Pa. 2004); Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986).

### B. The Plan is Ambiguous

The Debtor and the Liquidating Agent agree that the term "Assets" as defined in ¶ 1.8 of the Plan includes the Debtor's ownership interest in the two (2) Entities involved. The parties further agree that the definition of Assets encompasses distributions from those Entities, at least post-confirmation. The question is whether the Plan mandates that the Liquidating Agent collect

and distribute the post-petition, pre-confirmation distributions (hereafter, "the Distributions").

The Liquidating Agent's position is that "[t]he temporal frame for what constitutes an Asset for distribution by the Liquidating Agent is that property owned by the Debtor on the Petition Date as reflected on his schedules." (Liq. Agent Brief at ¶ 19). In response, the Debtor's position is that the Assets subject to collection by the Liquidating Agent are those Assets in existence as of the Effective Date of the Plan and the pre-confirmation distributions constitute "income," not Assets within the meaning of the Plan.

I conclude that the Plan is reasonably susceptible to either reading, rendering the term "Assets" ambiguous.

Neither party submitted extrinsic evidence in support of the meaning of ¶ 1.8. The only extrinsic evidence available is the Disclosure Statement, and previous versions of the Plan and Disclosure Statement. See In re Sunnyland Farms, Inc., 2016 WL 1212723, at *3 (Bankr. D.N.M. Mar. 28, 2016); In re Penberthy, 211 B.R. 391 (Bankr. W.D. Wash. 1997).

For this reason, my analysis of the meaning of ¶ 1.8 will be confined largely to the four corners of the Plan.

### C. The Parties' Arguments

**1.**

The Liquidating Agent argues that the Distributions generated from the Entities since the petition date should be subject to distribution. The Liquidating Agent's argument finds some textual support in the Plan.

The first indication is the expansive definition of "Assets" - all right, title, and interest of

the Debtor in nonexempt assets.

It is a fundamental concept in chapter 11 law that post-petition income generated by estate property distributions constitutes property of the estate.[8] It is no great stretch to infer that, in a chapter 11 plan, the scope of the term Assets was intended to be consistent with the scope of estate property.[9]

The Liquidating Agent can point to another textual clue in support of his position. The definition of "Assets" refers to Schedules A and B of the Debtor's petition. An inference can be made that by referring back to schedules that were filed with the petition (or shortly thereafter), the Plan contemplated that the distributions of those Assets listed on the schedules were part of the funds for distribution.

---

[8] See 11 U.S.C. §541(a)(6) (property of the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate"); 11 U.S.C. §541(a)(7) (property of the estate includes "[a]ny interest in property that the estate acquires after commencement of the case"); 11 U.S.C. §1115(a)(1) (property of the estate for an individual chapter 11 debtor includes "all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13"); see also In re Javedanfar, 2016 WL 3356420, at *5 (Bankr. C.D. Cal. June 9, 2016); In re Grasso, 490 B.R. 500, 519 (Bankr. E.D. Pa. 2013); In re Chen, 2009 WL 3788898, at *2 (Bankr. N.D. Cal. Nov. 9, 2009), aff'd sub nom. In re George Q. Chen, 2010 WL 3744505 (N.D. Cal. Sept. 20, 2010), aff'd sub nom. Chen v. Schoenmann, 476 F. App'x 657 (9th Cir. 2011).

[9] Of course, there is an obvious contrary inference that can be drawn. If the term Assets was intended to be coextensive with the concept of property of the estate, the Plan easily could have said so with a clear and direct reference to the term "property of the estate" or its statutory authority. Instead, the Plan used a different term, arguably creating the inference that the scope of the defined term also differs.

**2.**

In his contrary approach, the Debtor reads ¶ 1.8 narrowly and seeks to turn the definition's reference to Schedules A and B to his advantage. The Debtor contends that, because the distribution from the Entities had not yet occurred as of the petition date, the postpetition income from the Entities fall outside the definition. (Debtor's Brief at 4).

The Debtor also argues, holistically, that because his liabilities vastly exceeded his assets, the overall approach of the Plan was to take the existing pool of assets, as of the Effective Date, and make them available for distribution to his creditors. This, the Debtor argues, is inherent from a Plan that revolved around a fixed point in time when the Liquidating Agent was to be appointed and the Plan was to be implemented, i.e., the Effective Date.

**D.  Analysis**

In a chapter 11 bankruptcy of an individual, the debtor remains in possession of all the property of the estate. See 11 U.S.C. §1115(b). Further, the Code contemplates that chapter 11 debtors will use property of the estate in the pre-confirmation process. See 11 U.S.C. §363(c). A debtor is not required to hold in trust all property of the estate for distribution to his creditors. Certainly, a debtor could craft such a plan but it is highly unlikely that a debtor would do so because it would leave the debtor without the means to provide for post-petition administrative expenses.

The Liquidating Agent has not questioned the propriety of the Debtor's use of property of the estate for administrative expenses in the ordinary course – here, in the form of personal living expenses. Nor has the Liquidating Agent asserted that prior court approval of such use of

estate property was necessary. Therefore, I will assume, without deciding, that in this case, the Debtor was entitled to use estate property (including the Distributions) in the ordinary course to pay administrative expenses (including easonable living expenses).[10]

Taking into account both the textual clues in the Plan and the context in which the Plan was proposed, I conclude that both parties are partially correct in their respective interpretations of the Plan..

I agree with the Liquidating Agent that the term "Assets" encompasses distributions made to the Debtor from non-exempt assets. In other words, I conclude that the better interpretation is to construe ¶ 1.8 of the Plan consistently with the bankruptcy concept of property of the estate. But, I also agree with the Debtor that his duty to deliver Assets to the Liquidating Agent for distribution under the Plan must be considered in context.

---

[10]  The case law is divided on this issue. Compare In re Villalobos, 2011 WL 4485793, at *8 (B.A.P. 9th Cir. Aug. 19, 2011) (since enactment of §1115, individual chapter 11 debtors no longer have option to pay expenses with post-petition income because it is property of the estate); In re Walter, 83 B.R. 14, 19 (B.A.P. 9th Cir. Cal. 1988) (holding that bankruptcy court has authority to deny debtor use of estate property for living expenses); In re Vincent, 4 B.R. 21, 23 (Bankr. M.D. Tenn. 1979) (holding Bankruptcy Code does not permit payment of personal expenses from property of the estate), with In re Johnson, 546 B.R. 83, 164 (Bankr. S.D. Ohio 2016) ("despite not having requested approval of his expenses, [debtor] was permitted to pay for his own reasonable, ordinary-course living expenses out of his postpetition income without requesting authority to do so"); In re Goldstein, 383 B.R. 496 (Bankr. C.D. Cal. 2007) (reasoning that §363(c) permits debtor to use post-petition wages to pay his ordinary course living expenses).

There also is some question whether court approval of the use of estate property for living expenses in an individual chapter 11 case is necessary. See In re Seely, 492 B.R. 284, 289 (Bankr. C.D. Cal. 2013) (questioning whether debtor must seek court approval before paying personal expenses, or only if the proposed expenses do not qualify as ordinary course expenditures).

I note that some courts have enacted local rules that address individual chapter 11 budgets. See e.g., Bankr. C.D. Cal. Local Form 2081-1.2.Motion.Budget, Notice of Motion and Motion in Individual Chapter 11 Case for Order Setting Budget for Interim Use of Estate Property as Defined in 11 U.S.C. §1115, available at http://www.cacb.uscourts.gov/forms/local_bankruptcy_rules_forms.

Upon the Effective Date, the Debtor was obliged to make the Assets available to the Liquidating Agent for distribution. However, it makes no sense to interpret the obligation to include Assets that the Debtor expended prior to the Effective Date in payment of administrative expenses – assets that no longer existed on that date. On the other hand, had the Debtor segregated and retained possession of the Distributions, or if they otherwise could be traced, as of the Effective Date of the Plan, the Liquidating Agent would be entitled to collect them for distributions to creditors.

This analysis brings me to the state of the record, or lack thereof. There is no evidence in the record on a critical factual issue: i.e., whether the Debtor expended the Distributions in the ordinary course during the pre-confirmation period as administrative expenses. In light of the relatively meager size of the Distributions ($22,198.00), it is is certainly possible that the Debtor spent this money on living expenses.

Like many contested matters, the outcome of this dispute turns on the burden of proof. As the moving party, the Liquidating Agent bears this burden. See In re Maylin, 155 B.R. 605, 614 (Bankr. D. Me. 1993) ("Generally, a movant bears the burden of proof on the elements necessary to warrant the relief he or she seeks"); see generally In re Paletti, 242 B.R. 65, 66 (Bankr. M.D. Fla. 1999) (burden of proof on movant to establish assets are part of bankruptcy estate).

Here, the Liquidating Agent offered no evidence to establish that the pre-confirmation Distributions made in 2011 were in existence, and therefore, were Assets to be collected, as of the Effective Date of the Plan. Therefore, he has not met his burden of establishing that the 2011 Distributions were "Assets" within the meaning of the Plan.

## IV.  CONCLUSION

For the reasons stated above, the Liquidating Agent's Motion for Turnover will be denied.  An appropriate order will be entered.

**Date: September 30, 2016**

**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**